THIEBAUD ET AL. *v.* THE FIRST NATIONAL BANK OF VEVAY.

LANDLORD AND TENANT.—*Lease.*—*Privilege of Renewing.*—*Election.*—*Holding Over.*—*Relief in Equity.*—Where real estate was leased for a term of five years, the rent to be paid semi-annually, and the lease contained a clause providing that the lessee was "to have the privilege of renting said premises for another term of five years," at the same rent and payable in the same manner, and after the five years expired the lessee continued in possession for eighteen months, paying rent as before, but no demand was made by the lessee for a renewal of the lease, and three months before the expiration of the second year after the expiration of the five years, possession was demanded by the lessor and notice to quit at the end of the current year served upon the lessee;

*Held,* that continuing to hold possession after the expiration of five years and paying rent by the lessee according to the terms of the lease, and the acceptance of the rent by the lessor, did not amount to the creation of a new term for five years.

*Held,* also, that under the covenant or agreement to renew the lease, the lessee must have elected to renew the lease and must have given notice thereof at or before the expiration of the first term; and it was too late to do so after the expiration of eighteen months and after notice to quit.

*Held,* also, that a failure to give such notice at the proper time was not a failure

which could be relieved against in a court of equity, except when the failure had resulted from unavoidable accident, fraud, surprise, or ignorance not wilful, and upon compensation being made.

WILFUL IGNORANCE.—*Relief.* — Ignorance is considered wilful when a person neglects the means of information which ordinary prudence would suggest; and ignorance of a man's own rights conferred by an instrument actually in his possession or power, when the other party is innocent of concealment, or of any conduct contributing to keep him ignorant of its contents, will not excuse the performance of the conditions imposed on the person claiming under the instrument.

APPEAL from the Switzerland Circuit Court.

DOWNEY, J.—This was an action brought by the appellants against the appellee, to recover the possession of certain real estate, of which it is alleged the plaintiffs are the owners in fee simple, and entitled to possession, and of which, as is alleged, the defendants hold possession without right, and to recover fifty dollars for damages in being kept out of possession of the same.

After a demurrer to the complaint, which was overruled, the defendant answered,

1st. A general denial; and

2d. That on the 15th day of April, 1864, Charles Thiebaud, then in life, but since deceased, from whom the plaintiffs derive their title, entered into a written agreement with the defendant, a copy of which is filed with the answer; that on the first day of May, 1864, the defendant, in pursuance of said agreement, entered into possession of said premises, and has at all times fully complied with the terms of said agreement; and it now holds and occupies said premises under and by virtue of said agreement, and is entitled by the terms of said agreement to hold said premises until the 1st day of May, 1874.

The agreement is dated the 15th day of April, 1864, and by it the said Charles Thiebaud rented to the bank the real estate in question for the term of five years from the 1st day of May, 1864, at the rate of seventy dollars per year, payable semi-annually; and in the lease or agreement there is the following clause or stipulation : " It is agreed between

said parties that said bank is to have the privilege of renting said premises for another term of five years, at the same rate of rent as specified for the first term of five years, payable in the same manner as above set forth."

3d. A third paragraph of the answer, which assumed the form of a cross complaint after the same was amended, alleges the making of the said agreement or lease by the ancestor of the plaintiffs, a copy of which is filed with the cross complaint, the taking of possession of the premises by the bank with the full knowledge and consent of Thiebaud, deceased, the holding of the same, and the payment of the rent stipulated for until the expiration of the said first term of five years, on the 1st day of May, 1869; and that on and after said last named date, the defendant, in accordance with said contract and with the full knowledge and consent of said Charles Thiebaud, remained in full and peaceable possession and occupancy of said premises, paying rent therefor, at the rate of seventy dollars per year, every six months, which said deceased received and accepted from defendant, and for which he gave his receipts in writing, copies of which are filed, until April, 1871. On said last named day, said Charles Thiebaud departed this life, after executing his last will and testament, by which two of the plaintiffs, who are named, were appointed his executors, who qualified as such in May, 1871; that on the 11th day of May, 1871, the defendant tendered and offered to pay to one of the executors the full amount of rent then due for said premises, according to the terms of said contract, but he refused to accept the same. It is also alleged that the bank now brings into court the sum of thirty-five dollars, the full amount of rent due for said premises up to that date, by the terms of the contract. The plaintiff in said cross complaint avers that it was, as against said deceased, and now is, as against the plaintiffs as his heirs at law, entitled to a renewal of said lease or renting for the term of five years from the 1st day of May, 1869, and ending on the 1st day of May, 1874, on the terms and conditions mentioned in the said contract, and

demands judgment that the plaintiffs, as such heirs, be compelled to execute to the said bank a valid lease for the said premises on the said terms for said term of time, and that it be allowed to continue to occupy said premises up to the 1st day of May, 1874, and for all proper relief.

The plaintiffs demurred separately to the second and third paragraphs of the answer. The demurrer to the second was sustained, and that to the third seems not to have been decided, but a reply in denial of the third was filed, making it probable that the demurrer was passed upon but no entry thereof made. In the reply the plaintiffs allege, that the said deceased did rent said real estate to the defendant, as set out in the answer, and that the five years expired on the 1st day of May, 1869; that no demand was made for the renewal of said lease, nor for a further term, at or before the expiration of said original term, by the defendant, of the deceased or his heirs; and that by mistake the decedent did not know his lease had expired; that the same was laid away five years before its expiration, and defendant did not notify decedent, who was then living, of the expiration of said lease nor of any desire to hold another term; and the lessor received the rent for said eighteen months from the lessee in ignorance of the expiration of said term, and not with any intent to renew it or create a new term under or like the terms of said lease. Defendant well knew said facts at the time of paying said rent, after the expiration of the term of said lease, to wit, the term of five years; and the lessor, immediately upon discovery of said mistake as to the time, and that said lease had expired, and rent had been paid after the expiration thereof, notified the defendant of said mistake and demanded possession of said premises, which was refused, and thereupon served upon the defendant a notice in writing to quit said premises and surrender possession on the 1st day of May, 1871, which was the end of the current year, which notice was served on the 11th day of January, 1871, more than three months before the expiration of the current year; wherefore, etc.

To this reply a demurrer was filed by the defendant, on the ground that it did not state facts sufficient, etc., which was sustained by the court. The plaintiff failing further to reply, judgment was rendered by the court for the defendant.

Several errors are assigned, but they present only one question, and that is as to the rights of the parties under that part of the lease or contract which we have above quoted.

The appellants contend that the holding over and payment of rent for eighteen months after the expiration of the first term of five years do not amount to the creation of a new or further term for five years from the date of the expiration of the first term, but that, on the contrary, these facts only created a tenancy from year to year, which might be and was terminated by the notice to quit; and that, consequently, the appellants were entitled to the possession of the premises and to maintain their action therefor.

The appellee insists, in the first place, that the instrument should be construed as a present demise of the premises, not only for the first five years, but also as a present demise for the second term of five years, at the option of the lessee; and that the remaining in possession with the knowledge and consent of the lessor for eighteen months after the expiration of the first term, paying rent according to the terms of the contract, and the giving of the receipts therefor were, when considered in connection with the language of the instrument, sufficient notice to the lessor of an election to accept the lease for the second term of five years; and in this connection it is insisted that the court erred in sustaining the demurrer to the second paragraph of the answer. But it may as well be stated in this connection as at any other place in this opinion, that there is no cross error assigned, and we can not therefore decide the question as to the sufficiency or insufficiency of the second paragraph of the answer. Notwithstanding this, however, it may become necessary for us to consider the views of the

contract thus presented, in disposing of the other points in the case.

Upon the facts alleged in the third paragraph of the answer, it is contended by the appellee, that if the instrument is not a present leasing, it is an agreement for a renewal of the lease, which a court will decree to be specifically performed; and that it is a covenant running with the land, and therefore binding on the heirs as well as on the lessor himself. It is further insisted that there is no mistake alleged in the reply which would entitle the lessor or his heirs to any relief; that he had the lease in his possession, and was bound to know its terms; that no fraud is charged, nor any act on the part of the bank inconsistent with its legal rights under the contract

We will inquire, then, whether the covenant and the continuing to hold possession and to pay rent according to the terms of the original lease amounted to the creation of a new term.

The part of the instrument in question is not in itself a lease for the second term of five years, nor is the whole instrument a lease for ten years with the privilege to the tenant to quit at the end of the first term of five years. It is a lease for five years, containing a covenant on the part of the lessor that the lessee may have "the privilege of renting the premises for another term," etc. The holding over and paying rent, according to the provisions of the lease relating to the first term, are relied upon by the appellee as showing an election on its part to hold for the new term of five years; and the acceptance of the rent is claimed as showing an acquiescence of the lessor and notice to him of such election. The case of *Kramer* v. *Cook*, 7 Gray, 550, was a case where the lessor sued the lessee for rent. The lease was for a term of three years, at seven hundred dollars per year, and, at the election of the lessee, for the further term of two years next after said term of three years, at a rent of seven hundred and fifty dollars per year. To prove the election of the defendant to hold under the lease for the

additional term of two years, the plaintiff produced evidence of the payment, after the expiration of three years, of two quarters' rent, at the advanced rate stipulated for in the lease in case the defendant elected to hold for the additional term, the declarations of the defendant that he was so holding, and a written notice by the defendant, after the expiration of the first term, to the plaintiff to repair the premises, and that he would hold the plaintiff responsible for the resulting damages if he did not repair. In disposing of the case, the learned judge who delivered the opinion of the court said: "No formal election or notice was necessary to the continuance of the lease for the additional term of two years. The continuing to occupy the premises, and the payment of the rent at the increased rate stipulated for in case of continuance, were the best possible evidence of the election of the. defendant to avail himself of the further term. They were a declaration and an act—the expression of the wish and its execution. If before the payment of the rent for the first quarter of the new term any doubt could exist under what tenure the defendant was holding, the payment of the rent at the increased rate removed the doubt. If it was necessary to prove that the election of the defendant was made at the time of the expiration of the three years, the evidence was ample for the purpose. He continued to occupy after the expiration of the three years. He paid the increased rent stipulated for from the time the three years expired. There is nothing in the case to indicate that at any time he claimed to occupy on any other terms. The provision in the lease is not a mere covenant of the plaintiff for renewal; no formal renewal was contemplated by the parties. The agreement itself is, as to the additional term, a lease *de futuro*, requiring only the lapse of the preceding term and the election of the defendant to become a lease *in præsenti*. All that is necessary to its validity is the fact of election.

"Even if notice of the lessee's intent to continue might be insisted upon by the lessor, he clearly might waive it; and he clearly did waive it by the acceptance of the increased

rent on the first days of April and July—an increase which could be predicated only upon such election by the lessee. Indeed, after the payment of the rent of July 1st and the receipt given therefor, and in the absence of evidence to control their effect, the question of the defendant's election to continue and of the plaintiff's assent thereto would not seem to be an open one."

There are some circumstances of difference between the language of the covenant in the Massachusetts case and that in the case under consideration. In the former case the new term was at an increased rate of rent, and the payments made were made at the increased rate.

In *Renoud* v. *Daskam*, 34 Conn. 512, the lease was for a term of five years, with a covenant that the lessor would, if thereto desired by the lessee, make and execute to the lessee a lease of the premises for the further term of five years upon the same terms. It was held, that to entitle the lessee to a renewal of the lease, it was necessary for him to declare his election before the expiration of the original term of five years. In that case the term of five years expired on the last day of March. The lessee remained in possession, and on the 2d day of April the lessor demanded possession and gave him notice to quit, upon which he stated his election to take a renewal of the lease and demanded the same. He sued for specific performance of the covenant, and it was held, that he was not entitled to any relief, because he had not given notice of his election to hold for the second term in proper time. This last case is distinguishable from the case under consideration in this, that there there was no act on the part of the lessor indicating an assent to the extension of the renting for the new term; while here there were three payments of rent which were accepted and receipted for by the lessor, and a holding over for eighteen months. The authorities seem to require, where the lessee is entitled to a renewal of the lease, that he should give notice promptly at or before the expiration of the first term or according to the agreement, unless other circumstances

of a controlling nature exist in the case, amounting to an excuse. In addition to the case of *Renoud* v. *Daskam, supra,* the following cases on this point may be noted: *Griffin* v. *Griffin,* 1 Sch. & L. 352; *Rubery* v. *Jervoise,* 1 T. R. 229; *Bayly* v. *The Corporation of Leominster,* 1 Ves. 475; *Maxwell* v. *Ward,* 13 Price, 674; S. C. 11 Price, 3; *The City of London* v. *Mitford,* 14 Ves. 41; *M'Alpine* v. *Swift,* 1 Ball & B. 285; *Baynham* v. *Guy's Hospital,* 3 Ves. 295; and *Eaton,* v. *Lyon,* 3 Ves. 690.

There is in this case no circumstance inconsistent with the position that the tenancy became, after the expiration of the first term, a tenancy from year to year. Chancellor Kent says: "If a tenant holds over by consent given, either expressly or constructively, after the determination of a lease for years, it is held to be evidence of a new contract, without any definite period, and is construed to be a tenancy from year to year." It is expressly provided by statute in this State, that "all general tenancies, in which the premises are occupied by the consent, either express or constructive, of the landlord, shall be deemed tenancies from year to year." A tenant for years, or from year to year, holding over will be presumed to hold under all the covenants of the former lease which are applicable to the new relation or tenancy. In support of these propositions we refer to *Finney* v. *The City of St. Louis,* 39 Mo. 177; *De Young* v. *Buchanan,* 10 Gill & J. 149; *Vrooman* v. *McKaig,* 4 Md. 450; *Ames* v. *Schuesler,* 14 Ala. 600; *Bradley* v. *Covel,* 4 Cow. 349; *Conway* v. *Starkweather,* 1 Denio, 113; *Jackson* v. *Salmon,* 4 Wend. 327; *Hyatt* v. *Griffiths,* 33 Eng. L. & Eq. 75. In *Prickett* v. *Ritter,* 16 Ill. 96, the rule is stated to be, that where a party enters upon premises under a lease for a year or years, and holds over, it will be construed as an implied agreement for a year, and from year to year. When a lease is for any period less than a year, the holding will be construed as being for another term of the same length of time; and in all cases as upon the same terms, as to the amount of rent

and times of payment, unless there be some act of one or both of the parties to rebut such implication.    The case of *Bright* v. *McOuat,* 40 Ind. 521, which is cited by counsel for the appellee as authority, agrees with the doctrine as above stated.   There the term was for less than a year, and it was held, that by holding over the tenant was to be understood as electing to hold for another similar term.

These cases sufficiently show that the holding over by the lessee in this case, and the payment of three half yearly instalments of rent, are entirely consistent with a tenancy from year to year, after the expiration of the five years, and do not amount to any more than the creation of such a tenancy.   This tenancy might legally be determined by at least three months notice to quit, expiring at the close of a current year.    2 G. & H. 359, sec. 3.

Do the facts set up in the third paragraph of the answer show a case for specific performance?   We are of the opinion that they do not.   A court of equity may, in a proper case, decree the specific performance of a covenant to renew a lease, and the cases involving the construction of such covenants have generally been in chancery, as a reference to the cases cited will show.

It is true, that in equity, time is not generally regarded as material, unless the parties have made it so by their contract; and this doctrine is more frequently applied to cases for specific performance than to any other class of cases.   But in the cases involving the specific performance of covenants to renew, it is laid down, that to give a right of action for specific performance, the lessee must have given notice of his election or determination to take the new term at or before the expiration of the time limited.   We think that the proper construction of the covenant in this case is, that the election or determination must have been made and notice thereof given, at or before the expiration of the first term, and that therefore it was too late to do so after the expiration of eighteen months, and after notice to quit. In *Falley* v. *Giles,* 29 Ind. 114, a lease was made for two

years, with the privilege to the lessee to hold the premises upon the same terms for the additional term of one, two, or three years, at the election of the lessee. The questions in the case were, whether the lessee having, at the end of the original term of two years, elected to hold for one year longer, could again elect to hold still longer; and, second, was it necessary for the lessee, in order to prolong his term more than one year beyond the original period, to give notice to the lessor of his election to do so, otherwise than by remaining in possession? It was held in the first place, that there could be but one election, and in the second place, that to enable the tenant to hold more than one year after the expiration of the first term, he must give notice to the lessor, and that merely remaining in possession did not amount to such election and notice. The failure of the lessee to elect to renew the lease for the second term and to give notice to the landlord at the proper time, is not a failure which can be relieved against in a court of equity, except, as it seems, when the failure has resulted from unavoidable accident, fraud, surprise, or ignorance not wilful, and upon compensation being made. See the cases above cited; also Platt Cov. 256, *et seq.* As to what amounts to wilful ignorance, we find this statement of the law in a work of the last named author, and it is sustained by the authorities cited by the author, some of which we have examined, and have cited in this opinion:

" Ignorance is considered wilful, where a person neglects the means of information which ordinary prudence would suggest; and it is clear that ignorance of a man's own rights, conferred by an instrument actually in his possession or power, where the other party is consequently innocent of concealment, or of any conduct contributing to keep him ignorant of its contents, cannot excuse the performance of any conditions imposed on the person claiming under the instrument." 1 Platt Leases, 759.

There is nothing in the case to show such circumstances of excuse on the part of the lessee in this case as would

justify the interposition of a court of chancery. The doctine that courts of equity do not regard time as of the essence of the contract, unless made so by the parties, does not meet the difficulty in this case. Had the lessee given notice of its election to rent for the second term, in proper time, it would then have had a perfect right of action, which might have been enforced in a suit for specific performance. But not having done this, and having allowed the tenancy to become converted into a tenancy from year to year, we are of the opinion that the cross complaint can not be sustained. We think the court should have sustained the demurrer to the third paragraph of the answer.

The judgment is reversed with costs, and the cause remanded, with instructions to sustain the demurrer to the third paragraph of the answer, and for further proceedings in accordance with this opinion.

*H. W. Harrington, C. A. Korbly,* and *Adkinson & Livings,* for appellants.

*W. R. Johnston,* for appellee.