Gilbert M. Landy, J.
This is a summary proceeding brought by the petitioner landlord (Landlord) for the removal of the respondent tenant (Tenant) from the commercial premises located at 1570 Central Park Avenue, Yonkers, New York, on the ground that he remains in possession of the premises and holds over after the termination of his lease on February 28, 1969.
In January, 1967, the parties entered into a written lease of the premises for a term of two years, to commence on March 1, 1967 and to terminate on February 28, 1969. The lease provided for a renewal thereof by the Tenant for an additional period of three years, if the Tenant notified the Landlord in writing of his intention to exercise the option at least 90 days prior to the expiration of the lease on February 28, 1969.
The facts are not in dispute. No testimony was taken on the trial, but the matter was submitted to the court on a stipulation of the facts agreed upon by both parties. For clarity, the stipulation is quoted in full:
“ The above quoted clause gave the tenant the sole option to renew his lease provided that he notify the landlord in writing of his intention to exercise the option at least ninety (90) days prior to the expiration date of the lease. This date for the exercise of this option was on or before the 30th day of November, 1968.
“Upon the tenant’s failure to exercise his option to renew pursuant to the terms of the lease, the landlord entered into negotiations with a new tenant for the lease of the above mentioned premises.
*985 ‘1 The Respondent-Tenant would have testified that he believed that his attorney, marshall s. belkin, esq., was to exercise the option to renew the lease for him. Mr. Belkin would testify that he was not to exercise the option for the Respondent but would have also testified that the lease has been continually in his possession since November 6, 1968.
“ On February .28, 1969, the landlord received a letter dated February 27th, 1969, from del bello & belkin, the attorneys for the tenant, advising the landlord that the tenant was exercising his option to renew his lease for an additional period of three (3) years. This letter was received by the landlord on the last day of the term of the lease and approximately ninety (90) days after the date on which the tenant should have exercised his option.
‘ ‘ A prospective tenant, affiliated pet centers, inc., entered into a lease on March 1st, 1969 with mico management cokp., commencing the 1st day of March, 1969. This term commenced with the understanding that the prospective tenant, affiliated pet centers, inc., would take occupancy as soon as the former tenant, george scaraggi, vacated the premises.
“ The landlord, not receiving any communications from the tenant, george scaraggi, in good faith entered into negotiations of the lease with the new tenant. These negotiations were entered into only after the tenant, george scaraggi, failed to comply with the expressed provisions of his lease, (to wit: par. 31) in exercising, or indicating his desire to renew his lease at least ninety (90) days prior to the expiration date thereof. ’1
The Landlord contends that the failure of the Tenant to give it the notice of intention to exercise the option of renewal of the lease on or before November 30, 1968, as specified in the lease, until February 28, 1969, the last day of the original term, extinguished his right to a renewal thereof and that he now holds over after the expiration of the original term of the lease. The Tenant alleges that his failure to give the notice within the time specified in the lease was due to a mistake in that he believed that his attorney was to exercise the option to renew on his behalf and his attorney believed that he was not to exercise the option on behalf of the Tenant.
The case, therefore, presents the legal question of whether under the stipulated facts, the Tenant is entitled to a renewal of the lease for an additional period of three years commencing on March 1,1969 at the rental of $300 per month, or whether his right to that additional term was extinguished by his own default.
*986 It is true that as a general proposition of law, where the terms of a lease specify the time when the renewal thereof shall be made and notice given, such provisions control, and in the absence of a waiver or of special circumstances which warrant equitable relief, the right to renew the lease is lost (510, C. J. S., Landlord & Tenant, § 59; 34 N. Y. Jur., Landlord and Tenant, § 419; 2 New York Law of Landlord and Tenant, § 593).
Ordinarily, where the terms of a lease provide a lessee with a right to renew his lease upon the giving of a prescribed notice to the landlord, the giving of that notice is a condition precedent which must be complied with within the stipulated time (Fidelity & Columbia Trust Co. v. Levin, 128 Misc. 838, affd. 221 App. Div. 786, affd. 248 N Y 551; Doepfner v. Bowers, 55 Misc. 561; Matter of Topp, 81 N. Y. S. 2d 344; Ocumpaugh v. Engel, 121 App. Div. 9).
However, there is no question that equitable defenses may be interposed in summary proceedings, whether brought for nonpayment of rent or against a holdover. This is true, particularly, in cases in which the delay in giving the required notice of renewal has not been' so great as to constitute laches in the failure and that default in giving notice was attributable to an honest mistake or similar fault, where the delay has hot prejudiced the landlord and where the tenant has a valuable interest in the property (Real Property Actions and Proceedings Law, § 743; Jones v. Gianferante, 305 N. Y. 135; Rizzo v. Morrison Motors, 29 A D 2d 912; New York Life Ins. & Trust Co. v. Rector etc. of St. George’s Church, 64 How. Prac. 511; Great Park Corp. v. Goldberger, 41 Misc 2d 988; Ringelheim v. Karsch, 112 N. Y. S. 2d 130; Burgener v. O’Halloran, 111 Misc. 203; Matter of Topp, supra; cf. Gordon v. Mazur, 284 App. Div. 289, affd. 308 N. Y. 861).
In each of the cases relied upon by the Tenant and cited immediately above, the honest mistakes resulted in confusion and uncertainty on the part of one or both parties due to ambiguity in the language employed in the renewal clause in the lease. In the instant ease, the language of the renewal clause is clear and, apparently, was well understood by the Tenant as demonstrated by his action in forwarding the lease to the attorney on or about November 6, 1968, some 24 days prior to the law day on November 30, 1968. It was stipulated that he would testify that he believed that his attorney was to exercise the option to renew the lease, but the attorney stated that he was not to exercise the option. Moreover, the notice that the Tenant desired to renew the lease was not sent to the Landlord within a few days or weeks after November 30, 1968, the law day. It *987 was not until February 27, 1969, the next to the last day of the term of the original lease, that the notice was sent. It was received by the Landlord on February 28, 1969, approximately 90 days after the law day and the last day of the term. By that time, the Landlord apparently had negotiated with a prospective new tenant and on March 1, 1969 that new tenant signed a lease commencing on that day, covering the premises which are the subject of this proceeding.
The court concludes that the facts in the instant case demonstrate that the failure of the Tenant to exercise his option to renew the lease was due to negligence and did not result from uncertainty or ambiguity concerning the requirement of the time within which the notice was to be given. The court determines, too, that the mistake which followed some misunderstanding between the Tenant and his attorney is not such a mistake which entitles him to the equitable relief indicated in the Jones, Rizzo, New York Life Ins. & Trust Co., Ringelheim, Burgener, and Topp cases, cited above. Bather, the court is of the opinion and holds that this case is governed by the principles recited in the Fidelity & Columbia Trust Co., and Doepfner cases mentioned above.
The decision of the court has not been determined without sympathy for the Tenant because of the disappointment and loss which he will suffer as a result. The decision was reached only after extensive research and consideration of the legal principles presented. Sympathy for the Tenant or the Landlord is prohibited in the conclusion of the court just as it is in the mind of a juror who is called upon to participate in a verdict.
The law must have general application and the court must adhere to the established principles. Individual cases necessarily are required to conform to the principles lest the condition of law and society be one of uncertainty and chaos (Doepfner v. Bowers, supra). Final order and warrant is directed to issue in favor of the Landlord.