Oscar Murov, J.
This is a summary proceeding brought by a landlord to dispossess a tenant on the ground that the lease has expired and the tenant is a holdover.
The terms of the lease provided that the tenant had an option to renew the lease for an additional term, provided *320 the tenant gave notice to the landlord 90 days prior to the expiration of the lease of her election to exercise that option. Both sides agree that such notice was not given in time. The respondent-tenant is asking to be excused for her failure to give such notice, based on the authorities of law discussed herein.
The tenant, Mrs. Grace Marconi, has been operating a pizzeria at the premises in question for at least five years. Her lease expired on September 15, 1971. It contained a renewal option clause which stated that the tenant ‘ ‘ shall notify the landlord by certified mail no later than ninety (90) days prior to the expiration of this lease ’ ’. Accordingly, the law day for renewal was June 15, 1971. There is in evidence a letter from the tenant to the landlord dated June 14, 1971 informing the landlord of her intention to exercise her option to renew the lease. Mrs. Marconi testified that she gave the letter to her son to mail on June 14, 1971, but that he did not mail it until June 18, 1971. It was received by the landlord on June 20, 1971, and he notified the tenant that her notice was untimely.
The arguments advanced by the tenant are that the pizzeria business is now the sole support of Mrs. Marconi, her husband and six children; that her husband is suffering from a terminal disease; that she has installed equipment and made improvements to the property amounting in value to $9,000; that she will suffer irreparable, harm if she is not relieved of her default in giving timely notice to renew; and that, conversely, the landlord has given no evidence of any irreparable harm or prejudice that he has suffered by the late notice.
The landlord’s rejoinder is that the equipment installed by the tenant, such as ovens and air conditioners, is readily removable and thus the tenant would not suffer irreparable harm by having to remove them and find a new location; and that, as a matter of law, the tenant’s failure to give timely notice was not due to any mistake as to when such notice was due, but rather was caused by her own negligence, and is not the sort of mistake that would entitle her to equitable relief.
A consensus of the case law is that at least the following elements must be present in order to excuse a tenant:
(1) that no harm or prejudice to the landlord resulted from the default in giving notice; and
(2) that the default was due to an honest mistake or similar excusable default.
These would seem to be the minimum requirements in order to excuse a tenant. In addition, the courts have looked at other factors such as ambiguity in the terms of the lease as *321 to when such notice was to be given; substantial improvements to the premises made by the tenant at some cost to him; and substantial loss to the tenant if the default prohibition is enforced.
Older case law in New York tends to support the petitioner’s case on the legalistic theory that a tenant’s failure to exercise his option to renew in time was a failure of a condition precedent; that such a failure extinguished the tenant’s option to renew; and that the court was without power to create an estate which the tenant was powerless to create. A different result would have obtained where there was an existing estate in a tenant and then failure of a condition subsequent which would act as a defeasance. (Fidelity & Columbia Trust Co. v. Levin, 128 Misc. 838; Doepfner v. Bowers, 55 Misc. 561.)
On the other hand, the recent cases in point have disregarded the antiquated distinction between conditions precedent and conditions subsequent and have instead carved out the guidelines set forth above.
The early leading case in this regard was Jones v. Gianferante (305 N. Y. 135). In that case both lower courts found as fact that the renewal option clause in the lease was ambiguous as to the time when notice to renew was to be given; that his failure to notify the landlord was the result of an honest mistake in construing that clause of the lease; that the landlord suffered no damage by the brief delay between the time the tenant was supposed to give notice and the time he actually did so; and that the eviction of the tenant would cause him much hardship. Based on these factors, the Court of Appeals upheld the Appellate Division in following the principle that a tenant can be given the benefit of the equitable rule relieving him against forfeiture of valuable lease terms when default in notice has not prejudiced the landlord, and has resulted from an honest mistake, or similar excusable default.
Similar decisions were reached in Rizzo v. Morrison Motors (29 A D 2d 912); Ringelheim v. Karsch (112 N. Y. S. 2d 130); and Matter of Topp (81 N. Y. S. 2d 344).
In Rizzo v. Morrison Motors, the trial court found that the option renewal clause of the lease was ambiguous, and to that, the Appellate Division added its finding that the tenant in all good faith intended to accomplish a renewal and that it would be a hardship to frustrate that intention. The court then quoted the principle laid down in Jones v. Gianferante (305 N. Y. 135), set forth above.
*322 In Ringelheim v. Karsch the court based its ruling largely on its finding that the lease did not provide that time was of the essence in the exercise of the option. Also, the court noted that the tenant’s failure was “ inadvertent ” and “occasioned by mistake ”. Furthermore, the tenant’s investment in the store was substantial and the sale value of the business would have been greatly lessened if he were forced to operate without a lease for a fixed term. Finally, the court noted that the landlord failed to establish that he was prejudiced in any way by the tenant’s failure to give timely notice.
In the Topp case the court rested its decision on the facts that the tenant did not personally know exactly when his lease was to expire because his attorney had the lease; the lease itself was ambiguous in relation to the renewal option notice period; the tenant had invested a considerable sum of money in the landlord’s property; and the landlord was not injured, since delay in giving notice was slight.
There is one lower court case that tends to support the landlord’s position: Mico Mgt. Corp. v. Scaraggi (59 Misc 2d 984, Yonkers City Ct., 1969). The tenant was late in giving notice of his intention to renew the lease and attempted to excuse his failure by the fact that he believed his attorney was to send the renewal and his attorney believed that the tenant himself would send it. That notice was to have been sent by November 30, 1968. The court noted that the tenant forwarded his copy of the lease to his lawyer on November 6, 1968. The date the lease expired was February 28, 1969. The tenant’s attorney did not send the notice of renewal until February 27, 1969. The court conducted a thorough review of the case law in this area and specifically distinguished this case from Jones v. Gianferante and similar decisions on the ground that, in those cases, the honest mistakes resulted in confusion and uncertainty on the part of one or both parties due to ambiguity in the language employed in the renewal clause of the lease. Conversely, in the Yonkers case, the court felt that the conduct of the tenant described above indicated that the language of the renewal clause was clear and well understood by him. Also, because of the extremely late notice that was ultimately sent, the landlord had already negotiated a new lease with a new tenant and it had been signed. From this, the court concluded that the failure of the tenant to exercise his option in time was not due to any uncertainty or misunderstanding concerning the time within which the notice was to be given, but was due to his negligence. The court also determined that a mistake arising out of a misunderstanding between the tenant and his attorney *323 as to who was to send the notice is not the sort of mistake envisioned by the courts that would entitle the tenant to equitable relief.
The case which is closest in point to the instant matter is Sy Jack Realty Co. v. Pergament Syosset Corp. (27 N Y 2d 449). As in this case, the facts in Sy Jack were not in dispute. The defendant, a retailer, had occupied a store owned by the plaintiff and had conducted business there for more than 15 years. The lease expired in June, 1969. The defendant had an option to renew provided that notice of exercise of that option was to be given to the landlord in writing on or before March 31, 1969. The defendant claimed that he mailed such a notice to the plaintiff on March 28 but that it was never delivered. The landlord took no action until May 5, and on that date indicated to the tenant that he anticipated a new tenant. On May 6 the tenant notified the landlord in writing that it intended to renew, and referred to its previous notice sent on March 28. The Court of Appeals upheld the Appellate Division’s application to this case of the principle that ‘1 a tenant should be relieved of its default when its failure to give the requisite timely notice of renewal of its lease — or to perform some other condition precedent to renew — has neither harmed nor prejudiced the landlord and was not due to bad faith ” (p. 452). (Citing Jones; Rizzo v. Morrison Motors; Ringelheim v. Karsch; and Topp.)
The court added (p. 453):
“ Since a long-standing location for a retail business is an important part of the good will of that enterprise, the tenant stands to lose a substantial and valuable asset. Moreover, as is conceded, the landlord did not suffer any damage or prejudice because of the delay resulting from the nondelivery of the defendant’s letter. It is important to bear in mind that the difficulty in which the defendant finds itself is not owing to any willful or deliberate act or omission on its part. Its plight stems solely from the Post Office’s failure to deliver its letter which, in normal course, would have been received in ample time to effect the renewal. If reliance on the mails could possibly be characterized as fault, it is ‘ excusable fault ’ * * * and should not operate to deprive the defendant of a valuable asset.
“ Not alone authority but a sense of justice and fairness support the decision that the defendant should be deemed to have exercised his option to renew.”
The arguments advanced by the landlord are not persuasive. The tenant h^s established that her dispossession would cause *324 irreparable harm to her and her family. Even though the equipment, such as pizza ovens and air conditioners, is removable, it would be of little use to the tenant unless she had some place to put them. Over the course of the past five years, this tenant has built up a valuable leasehold interest at this location. The site of a small restaurant business such as this, a local neighborhood enterprise, is an important part of the restaurant’s success. This tenant would not have a leasehold of equal value if she had to re-stall the equipment in other premises perhaps several blocks away. Furthermore, the landlord’s contention that the tenant’s husband has been seen working in the pizzeria does not negate her testimony that he is suffering from a terminal disease. On the other hand, the landlord has made no showing of any harm or prejudice to him caused by the short delay in giving notice.
This court concludes that both the facts and the law of Sy Jack Realty Co. v. Pergament Syosset Corp. (supra) are highly persuasive in the instant case and that the essential elements necessary for granting the tenant the equitable relief she seeks are present here.
The tenant shall be deemed to have given timely notice of her intention to exercise her option to renew the original lease, and, accordingly, the petition is denied.