A. WAYNE CARSTEN AND DORIS M. CARSTEN, MIDWEST AGGRE-GATES CORP. *v.* CHARLES W. EICKHOFF AND MARTHA E. EICK-HOFF, CHARLES M. EICKHOFF (DECEASED), EDNA E. EICKHOFF, PAUL EICKHOFF AND MARGARET EICKHOFF, RICHARD SAGE AND CAROLYN SAGE, MARY ANN (EICKHOFF) BUNSOLD ET AL.

[No. 3-373A33. Filed February 26, 1975. Rehearing denied April 15, 1975. Transfer denied November 25, 1975.]

*David B. Keller, Keller, Fleck & Holleran,* of Fort Wayne, *Marvin S. Crell, Tourkow, Danehy & Crell,* of Fort Wayne, for appellants Carsten. *J. A. Bruggeman, Barrett, Barrett & McNagny,* of Fort Wayne, for appellant Midwest Aggregates Corp.

*Jack R. Notestine, Notestine & Trotter,* of Fort Wayne, for appellees.

STATON, P.J.—The Carstens had a three year lease with an option to renew for ten years which permitted them to remove topsoil, gravel and sand from the Eickhoffs' farm. Midwest Aggregates Corporation became the Carstens' sublessee. Removal operations continued several years after the time for renewal had expired when the Eickhoffs gave notice that the lease would be terminated. The Carstens brought an action for a declaratory judgment contending that they were entitled to a ten year term under the option provision of the lease. The Eickhoffs maintained that the Carstens were tenants from year to year. Midwest filed a cross-complaint to have its rights declared as against the Carstens and the Eickhoffs.

The trial court declared that failure to exercise the "option to renew" resulted in a tenancy from year to year. The Carstens and Midwest filed their motions to correct errors which raise these issues on appeal:

Issue One: Was a tenancy from year to year created when the Carstens failed to give notice of the exercise of their option to renew the lease for a ten year term?

Issue Two: Did the continued payment of royalties and the holding over create the right to equitable relief from the required notice to renew?

Issue Three: Did the trial court err when it failed to declare Midwest's rights against the Carstens?

We conclude that a year to year tenancy was created as declared by the trial court. The Carstens are not entitled

to equitable relief since the holding over and the payment of royalties were not sufficient notice under the terms of the lease to exercise the option to renew. We affirm the trial court's judgment upon the above, and remand with instructions to enter judgment on the cross-complaint of Midwest.

## I.

### Lease

The Carstens operated a gravel business from their farm in Waynedale, Indiana, and in 1964, they sold their gravel business to Midwest. After becoming an employee of Midwest, Mr. Carsten executed a mining lease with the Eickhoffs which permitted the removal of topsoil, gravel and sand. The Eickhoff-Carsten lease, executed in April, 1967, provided for a three year lease with "four ten-year options to renew." In return for the right of removal, the Carstens were to pay the following royalties to the Eickhoffs:

". . . Lessees covenant and agree to deliver or pay to Lessors the sum of ten cents (10¢) for each yard of dirt removed from the premises and by Lessees disposed of on the market, and also the sum of eight cents (8¢) for each ton of gravel removed and marketed from the leased premises, and also four and one-half cents (4½¢) per ton for quarried limestone across the scales."

On August 15, 1968, the Carstens subleased their interest in the Eickhoffs' property to Midwest for ten years with "four ten-year options to renew." In consideration for the sublease, Midwest agreed to pay the Carstens:

"Lessee [sublessee] agrees to pay Lessor [lessee] ten cents (10¢) per yard on sand and gravel sold; ten cents (10¢) per yard on dirt sold and six cents (6¢) per ton of quarried limestone sold, computed on Actual truck scale weights, with a guarantee of not less than Three Thousand Dollars ($3,000.00) per year. . . ."

During the three year period of the Eickhoff-Carsten lease, the Eickhoffs received the following royalties:

1967-68    nothing
1968-69    $95.50
1969-70    $41.00

For renewal of the ten year option, the Eickhoff-Carsten lease required:

". . . Lessees shall notify Lessors at least sixty days prior to the expiration of the original lease, or any extension thereof, that they wish to exercise their option to renew the lease on the same terms and conditions."

As to notice, the Eickhoff-Carsten lease provided:

"Any notices to be given under this lease shall be made in person or by certified mail to Lessors, 6124 Lower Huntington Road, Fort Wayne, Indiana 46809, . . ."

Neither the Carstens nor Midwest gave the Eickhoffs written or oral notice at anytime that they intended to exercise the ten year option. Following the expiration of the three-year term, Midwest continued to remove topsoil, gravel and sand from the Eickhoff property, and the Eickhoff's were paid the following royalties:

1970-71    $  6,636.34
1971-72    $12,584.54

On January 11, 1972, the Carstens were orally notified by Paul Eickhoff, one of the lessors on the Eickhoff-Carsten lease, that the Eickhoffs considered the lease to be terminated. This oral notice was followed by written notice to the Carstens on February 15, 1972 demanding vacation of the premises by April 15, 1972. The Carstens then filed the declaratory judgment action giving rise to this appeal on March 30, 1972.

## II.

### Holding Over

The Carstens contend that the lease at issue should be construed as containing an option to extend rather than an option

to renew. Under Indiana law, if a lessee has a privilege or option to extend under the lease, a mere holding over and payment of rent will be sufficient to exercise the privilege. However, if the lessee has an option to renew, a mere holding over and payment of rent will not be sufficient to exercise the option to renew. *Fragomeni* v. *Otto Gratzol Signs* (1951), 121 Ind. App. 167, 96 N.E.2d 275; *G. S. Suppiger Co.* v. *Summit Gas & Water Co.* (1949), 119 Ind. App. 102, 84 N.E.2d 207. The Indiana cases give little guidance as to the reason for this distinction. The rule seems to have developed in Indiana as an aid to the courts in determining the intention of the parties regarding the effect of holding over when there was some right in the lessee to a further term but no express contract provision regarding the effect of holding over.[1] *See C. Callahan Co.* v. *Michael* (1910), 45 Ind. App. 215, 218-19, 90 N.E. 642, 643 (stating that ". . . an option of a renewal would seem to imply that the parties contemplated some affirmative act by way of the creation of an additional term. . . .") However, the lease at issue, whether construed as an option to extend or an option to renew, clearly required notice to the lessor of an intention to exercise the option before expiration of the current term. This notice requirement evidences an intent of the parties that there was to be no "extension" or "renewal" of the lease without the required notice. Regardless of whether the trial court construed the instant lease to contain an option to renew or an option to extend, the need for making the distinction has been eliminated by the notice requirement.[2] We conclude that the giving of the required notice is a condition precedent to the right of renewal. In the absence of any right to

---

1. Indiana does not follow the view that the exercise of an option to renew requires the execution of a new lease. *See Thurston* v. *F. W. Woolworth Co.* (1917), 66 Ind. App. 26, 117 N.E. 686.

2. Of all the Indiana cases reviewed by this Court treating the effect of holding over in relation to options to renew and options to extend, only one of these cases involved a lease with a notice provision as in the instant case. In *Gordon* v. *Tennant* (1940), 108 Ind. App. 326, 26 N.E.2d 559, this Court held that despite a notice requirement to "renew the lease," the mere holding over extended the lease for another term. To the extent that *Gordon* v. *Tennant* is inconsistent with this opinion, it is overruled.

equitable relief, the right of "renewal" or "extension" is lost if the notice is not given. Thus, if notice is stipulated in the lease, it must be given regardless of whether the lease provides for an option to extend or an option to renew. Since the lease at issue required notice "in person or by certified mail" and no such notice was given, the mere holding over and payment of rent was not sufficient notice under the contract. The reasoning behind demanding exact compliance with the terms of the option including the notice provision is that the lessor is bound to grant the additional term while the lessee is free to accept or reject it. Thus, the courts will not hold the lessor to his promise any longer than he has agreed to be held. *Sosanie* v. *Pernetti Holding Corp.* (1971), 115 N.J. Super. 409, 279 A.2d 904, 908; *University Realty & Development Co.* v. *Omid-Gaf, Inc.* (1973), 19 Ariz. App. 488, 508 P.2d 747, 749.

## III.

### *Equitable Relief*

Both Midwest and the Carstens contend that the Eickhoffs are estopped from denying a ten year renewal term, since they allowed Midwest to expend large sums of money and accepted royalties after the expiration of the lease. They further contend that the notice requirement has been waived. At the outset, it should be noted that the Carstens and Midwest, to the extent that the judgment determines Midwest's interest, are appealing from a negative judgment. The trial court found that the evidence did not entitle the Carstens to equitable relief. On appeal, this Court cannot review the sufficiency of the evidence to support the trial court's determination since a negative judgment may only be reversed for being contrary to law. In determining whether a negative judgment is contrary to law, this Court will not weigh the evidence nor resolve questions of credibility of witnesses. We will consider only the evidence most favorable to the appellees together with all reasonable inferences

deducible therefrom. It is only when the evidence leads to but one conclusion, and the trial court has reached the opposite conclusion that we will reverse. *Link* v. *Sun Oil Co.* (1974), 160 Ind. App. 310, 312 N.E.2d 126; *Lindenborg* v. *M & L Builders and Brokers, Inc.* (1973), 158 Ind. App. 311, 302 N.E.2d 816.

Both the waiver and estoppel arguments made by Midwest and the Carstens are based on the silence or acquiescence of the Eickhoffs. There is no assertion nor evidence of a false representation or concealment of material facts by the Eickhoffs. Mere silence on the part of the lessor is not a waiver unless he has a duty to speak. *See Lavengood* v. *Lavengood* (1947), 225 Ind. 206, 212; 73 N.E.2d 685. Also, for silence to give rise to equitable estoppel, there must be a duty to speak. *Erie Haven, Inc.* v. *First Church of Christ* (1973), 155 Ind. App. 283, 292 N.E.2d 837, 842. The Eickhoffs had no duty to remind the Carstens of the notice requirement nor to inform the Carstens that the lease would henceforth be treated as a tenancy from year to year.

The Carstens' and Midwest's contention that the acceptance of royalties for two years after the expiration of the lease estops the Eickhoffs from denying the renewal of the lease must fail. In the case of *Thiebaud* v. *The First National Bank of Vevay* (1873), 42 Ind. 212, although the lease involved did not contain a notice requirement, the Supreme Court of Indiana found that allowing a lessee to hold over for eighteen months and accepting three half-yearly rent payments did not constitute acquiescence by the lessor in another five year term. The Court held that such conduct was not inconsistent with a tenancy from year to year and further stated:

". . . The failure of the lessee to elect to renew the lease for the second term and to give notice to the landlord at the proper time, is not a failure which can be relieved against in a court of equity, except, as it seems, when the failure has resulted from unavoidable accident, fraud, surprise, or ignorance not wilful, . . ." 42 Ind. at 222. See *Woodrum* v. *Pulliam* (1970), Ky., 453 S.W.2d 263; *Nortex Foods, Inc.* v. *Burnett* (Tex. Civ. App. 1955), 278 S.W.2d 485; *McClellan*

v. *Ashley* (1958), 200 Va. 38, 104 S.E.2d 55; *contra, Armstrong* v. *Hendrickson* (1964), 160 Me. 230, 202 A.2d 558.

In the present case, there is no evidence of fraud, accident, surprise or mistake warranting the grant of equitable relief for the failure to give the required notice. The conduct of the Eickhoffs in allowing Midwest to continue to remove sand, gravel, and topsoil for two years after the expiration of the lease and in accepting royalties was not inconsistent with a tenancy from year to year and is not sufficient to entitle the Carstens and Midwest to equitable relief.[3]

Additionally, the Carstens and Midwest assert that by allowing Midwest to expend large sums of money in developing their stone quarry on the neighboring Poole farm, the Eickhoffs are estopped from denying the exercise of the first ten-year option. There is evidence to the effect that during 1969 and 1970, Midwest expended $750,000.00 for a stone crushing and processing plant on the Poole farm. Midwest also expended another $400,000.00 for mobile equipment and expended "in the area of thirty-five cents a yard" for the removal of 450,000 cubic yards of overburden from the Eickhoff property beginning in May, 1970. Gerald Horner, General Superintendent for Midwest, testified that overburden had been removed from the Eickhoff property preparatory to expansion of Midwest's quarry operation. He also estimated that to remove the present operation and set it up elsewhere would cost approximately $350,000.00. However, he testified that he had never communicated to any member of the Eick-

3. We would point out that this case is not within the line of cases from other jurisdictions allowing equitable relief when notice required under the lease is merely given late. *See Sosanie* v. *Parnetti Holding Corp.* (1971), 115 N.J. Super. 409, 279 A.2d 904; *Gallagher* v. *Marconi* (1971), 68 Misc.2d 319, 326 N.Y.S.2d 697; *Playmate Club, Inc.* v. *Country Clubs, Inc.* (1970), 62 Tenn. App. 383, 462 S.W.2d 890; *but see Galloway* v. *Scaraggi* (1969), 59 Misc.2d 984, 302 N.Y.S.2d 10; *McClellan* v. *Ashley* (1958), 200 Va. 38, 104 S.E.2d 55: Also, this case is not within the line of cases in which the lease calls for a higher rent during the second term and the lessee holds over paying the higher rent. See *Kramer* v. *Cook*, 7 Gray 550 cited in *Thiebaud* v. *The First National Bank of Vevay* (1873), 42 Ind. 212, 217.

hoff family that it would not be feasible to conduct the operation on the Poole farm without the availability of the Eickhoff property for expansion.

The evidence is conflicting as to whether Charles Eickhoff, who lived on the farm involved under the lease agreement, had any knowledge of the long-range plans of Midwest for the Eickhoff property. Since the permanent improvements were made on the Poole property, this case does not fall within the line of Indiana cases allowing equitable relief when the owner of land stands by allowing another to mistakenly erect improvements on his land. *Phar-Crest Land Corp.* v. *Therber* (1969), 251 Ind. 674, 244 N.E.2d 644; *Myers* v. *McGowen* (1965), 138 Ind. App. 163, 212 N.E.2d 411; *Chadwick* v. *Miller* (1956), 126 Ind. App. 325, 133 N.E.2d 67; *Bahar* v. *Tadros* (1953), 123 Ind. App. 570; 112 N.E.2d 754.

There is no evidence that the Eickhoffs were notified that the removal of overburden was in preparation for a long-term quarry operation on the Eickhoff land, and the removal of this topsoil was not inconsistent with allowing the continuation of the lease for the removal of sand, gravel, and topsoil from year to year. The expenditures by Midwest under the circumstances of this case do not entitle them to equitable relief.

## IV.

### Midwest's Right to Judgment

The trial court rendered the following judgment:

"Evidence having been submitted in this cause and the matter having been under advisement, the Court now issues the following judgment:

"That a certain real estate lease agreement entered into by and between Charles W. Eickhoff and Martha E. Eickhoff, husband and wife, Charles M. Eickhoff, unmarried, Edna E. Eickhoff, unmarried, Paul Eickhoff and Margaret Eickhoff, husband and wife, Richard Sage and Carolyn Sage, husband and wife, and Mary Ann Eickhoff, as Lessors, and A. Wayne Carsten and Doris M. Carsten, husband and wife, as Lessees, on the 15th day of April, 1967 and having a

term from April 15, 1967 to April 15, 1970, terminated on April 15, 1970 by reason of the Lessees' failure to exercise the option to renew the lease for additional terms, the right to which was granted on page 5 of said lease agreement.

"The Court further decrees that at termination of such lease the defendants continued to occupy the premises as tenants from year to year and that they held the premises from April 15, 1970 to April 15, 1971, and from April 15, 1971 to April 15, 1972 under the same terms and conditions as the original real estate lease agreement dated April 15, 1967.

"The Court further decrees that the Lessors on January 11, 1972, gave the Lessees ninety days' notice of the fact that they intended not to renew for an additional year's term and that on April 15, 1972, the Lessees lost all right to occupancy or use of the premises under the terms of the original real estate lease agreement or any of the additional terms created thereafter by continued occupancy of the land by the Lessees."

To the extent that the trial court's judgment determines the Carstens rights under the lease as lessees, it also determines Midwest's rights regarding the Eickhoffs' property. *See Poledor* v. *Mayerfield* (1930), 94 Ind. App. 601, 612, 173 N.E. 292. However, the trial court's judgment makes no mention of Midwest's rights against the Carstens under its sublease.[4] Although Midwest would have this Court determine its rights against the Carstens on appeal, we will not usurp the trial court's role as the trier of fact. Therefore, pursuant to Indiana Rules of Procedure, Appellate Rule 4(E), we affirm the trial court's judgment determining Midwest and the Carsten's rights under the Eickhoff lease, and pursuant to Indiana Rules of Procedure, Appellate Rule 15(M), we remand this cause to the trial court for a determination as to the rights of Midwest against the Carstens.

Hoffman, J., and Garrard, J., concur.

---

4. Although it is unclear from Midwest's cross-complaint that it is seeking an adjudication of its rights against the Carstens, Midwest's trial brief filed with the court before trial, clarified that Midwest was seeking such relief.