Sharon **POWERS, Mary Roseanna Hatke, John Qualio, Auditor of Tippecanoe County, Indiana, and Treasurer of Tippecanoe County, Indiana, Appellants (Defendants Below),**

v.

**CITY OF LAFAYETTE, Indiana, Appellee (Plaintiff Below).**

No. 79A04–9205–CV–168.

Court of Appeals of Indiana, Fourth District.

Nov. 1, 1993.

Michael J. Stapleton, Cheryl M. Knodle, Ball, Eggleston, Bumbleburg and McBride, Lafayette, for appellants.

Richard T. Heide, Carl J. Sandy, Lisa V. Schrader, Heide, Sandy, Deets, Kennedy, Schrader & Antalis, Lafayette, for appellee.

MILLER, Judge.

In this action, the City of Lafayette condemned only a leasehold interest in one of the two properties involved, having earlier acquired the owner-lessor's interest. The amount of damages awarded to lessees for their lease depended upon the amount of time left on the lease. The lessees contended (and presented evidence) that they had a beneficial (bonus) lease—the rental obligation under the lease was lower than a fair rental value—and that they had seven (7) years remaining on the lease. The City, on the other hand, pointed out that three (3) years before the condemnation action, the lessees' notice of intent to exercise a ten (10) year renewal option was made twenty-four (24) days before the expiration of their lease, contrary to the terms of the written lease which required notice to be given at least sixty (60) days before the lease expired. The trial court agreed and instructed the jury[1] that, as a matter of law, the lessees had only a year-to-year lease.

Lessees raise two issues in their brief and claim the trial court erred: (1) by giving Instructions No. 6 and No. 7 (which told the jury the lease was a year-to-year lease); and (2) by refusing to give their Tendered Instruction No. 2 (which explained to the jury how to value the lease-

hold interest). They ask us to reverse and remand for a new trial.

We find their first issue dispositive. The trial court erred by giving Instructions No. 6. and No. 7 and, thereby, prevented the jury from deciding whether the lease had been renewed. We reverse and remand for a new trial.

## FACTS

■ On February 8, 1991, the City filed a complaint in condemnation against Sharon Powers, Mary R. Hatke, and John Qualio (lessees) to take two parcels of land and the improvements thereon for a railroad relocation project. Lessees owned a fee simple interest in one lot (Lot 1) and a leasehold interest in the adjacent lot (Lot 2, the subject of this case).[2] Lessees also owned a warehouse built on both the fee simple and leasehold land. The warehouse was rented to third persons for warehousing and manufacturing. The City offered lessees $123,000 for their interests. Lessees rejected this offer and asked the trial court, as per statute, to appoint three appraisers to value the condemned lots. The appraisers found that the value was $138,218. Lessees accepted this value, but the City filed exceptions to the appraisers' report and the case went to trial. The jury found, after the trial court instructed them that the ground lease expired on October

---

1. See n. 3, infra.

2. Under state statutes which require owners to be joined as parties in a condemnation proceeding, lessees are considered necessary parties. Julius L. Sackman & Patrick J. Rohan 2 Nichol's The Law of Eminent Domain § 5.06[1] (1993 supp.). "Consequently, it has been held that the lessee's rights are not affected by the lessor's settlement with the condemnor." Id. Our supreme court has said that the failure to name all interested parties is not a jurisdictional defect in condemnation actions. Kosciusko Co. R.E.M.C. Inc. v. N.I.P.S.C.O. (1967), 248 Ind. 482, 229 N.E.2d 811, 822. This court has found, relying on Kosciusko, that it was within the right and discretion of the condemnor to either name or not name the lessee of an oil and gas lease on the land to be condemned. Wyatt–Rauch Farms, Inc. v. Public Service Co. of Ind., Inc. (1974), 160 Ind.App. 228, 311 N.E.2d 441, 443. This is because "the law is settled that no one's rights may be adversely affected if he is not a party to the litigation...." Id.

The owner/lessor of Lot 2 was not a named party in this condemnation action. The Record does indicate that the City and lessor settled on the value of the lessor's interest in another proceeding. In lessees' Motion to Correct Error, the lessees alleged that when the City condemned and appraised the lessor's fee simple interest, it was considered subject to the lessee's interest until October, 1998, and the value of the lessor's interest was accordingly reduced. R. 4.

Thus, in the instant case the only question was the value of lessees' fee interest in one lot and the leasehold value in the other lot. Had both the fee owner/lessor and the lessees been parties in this case, the terms of the lease would have been irrelevant as to the gross amount of damages (market value of the land and improvements) due from the City. The question of how damages are divided between defendants is solely an issue between the defendants. Illinois Pipe Line Co. v. Coffman (1933), 98 Ind.App. 419, 188 N.E. 217 (landlord and tenant); 27 Am.Jur.2d Eminent Domain § 250, n. 3.

23, 1991—instead of October 23, 1998 [3]— that the lessees were entitled to damages of $88,000.

## DECISION

### I. INSTRUCTIONS NOS. 6 & 7

The lessees claim the trial court erroneously instructed the jury by giving instructions Nos. 6 & 7 which told the jury that—as a matter of law—the option to renew their beneficial lease had not been exercised and, therefore, the lease had become a year-to-year lease. An erroneous jury instruction requires a reversal if it could have formed the basis for the jury's verdict. *Canfield v. Sandock* (1990), Ind., 563 N.E.2d 1279, 1281. "We will assume that the erroneous instruction influenced the jury's verdict unless it appears from the evidence that the verdict could not have differed even with a proper instruction." *Id.*

Here, it is undisputed the lease required, in order to effectuate a ten year renewal, that lessees give written notice to lessor at least sixty (60) days before the end of the existing term of the lease. R. 381, page 2. Lessees, by Bill Powers, husband of lessee Sharon Powers, who was serving as manager of the property, testified that written notice was given to lessor twenty-four (24) days before the last day of the term. Powers tendered a full year's rent with the notice and the lessor accepted the rent.

Powers also testified, without objection, that he had communications with the lessor before the sixty day notice period and that the lessor communicated that he had every expectation that the lease would be renewed. R. 440, 467. His testimony is as follows:

Q. Had you communicated your intentions of renewing the lease?

3. The jury was instructed thus:
*Instruction No. 6*
The ground lease entered into on October 23, 1968 between Imogene Biltz, as lessee, and Genevieve Plummer and John W. Plummer as lessors, and as extended by the option to renew at the conclusion of its first ten (10) year term was not extended for a second ten (10) year term from October 23, 1988, through

A. Absolutely.

Q. Alright, and—from your communications with Mr. Plummer could you—where you able to determine whether or not he had every expectation that you would renew the lease?

A. Yes he did.

\* \* \* \* \* \*

Q. And you've had discussions with him as to what would happen in 1998 after the additional ten year term was to be started?

A. He and his attorney.

R. 440.

Q. My question is has Mr. Plummer evidenced, given you any indication that he did not intend to continue honoring the lease until '98?

A. No, he did not.

R. 467. Powers further testified that there was never any question that the option to renew the lease had been exercised and the failure to give notice before the sixty day period was simply an oversight. Powers also said he and the lessor had discussed during these same conversations what would happen in 1998, that is, when the lease expired. R. 440, 469–470.

A. We know that it was obviously gonna be a touchy situation come 1998 as to what's gonna happen to the future of the warehouse. And there were really, in our eyes, only three options. Mr. Plummer would have bought our portion, which was about half the building, we would have bought Mr. Plummer's, or an obvious remedy, if that didn't work out, we couldn't arrive at a comparable price or a fair price to both parties we could have formed a joint venture and jointly owned the property and continued to rent it.

October 23, 1998, and said lease terminated October 23, 1991, as a matter of law.
*Instruction No. 7*
You are instructed that if a tenant under a lease, which is for a term of more than one (1) year, fails to renew said lease yet remains on the property as a holdover tenant, he becomes a tenant for a period of one (1) year.
R. 167, 168, 830, 831.

R. 470. Finally, Powers testified there had never been any question between the lessees and the lessor that the option to renew had been exercised and therefore, the lease had renewed for an additional ten years.

Q. Okay, and he [Plummer] has taken no legal action against you to question whether or not that was an additional ten year lease or not?

A. No, he had not.

R. 441.

Lessees then called the lessor, Thomas Plummer, as a witness. The City objected to his testimony on the basis that it was undisputed that the notice to exercise the option was late and thus, as a matter of law, the option had not been exercised and the lease had not been renewed. The trial court, after an offer to prove, sustained the objection and found as a matter of law, the lessees were holdover tenants and the lease had converted to a year-to-year lease.

The trial court relied upon the holding in *Carsten v. Eickoff* (1975), 163 Ind.App. 294, 323 N.E.2d 664, which found that, after the tenant failed to exercise its option to renew but merely held over for three years while paying the agreed rent, the lease of a gravel pit had not been renewed but instead had converted to a year-to-year lease. The trial court's reliance on *Carsten* is misplaced. *Carsten*, a trial before the court, involved a dispute between a lessor and a lessee who had entered into a three (3) year lease with an option to renew for four (4) ten (10) year periods (the lease could be renewed for a ten year term—four times—or a total of forty years). Lessee failed to give the required sixty (60) day notice of intent to renew the lease before the end of its first three (3) year term. However, lessee held over and continued to pay the agreed rent which consisted of royalties on the material removed from the land. Three years later, lessor notified lessee that the lease had been terminated and that the premises were to be vacated at the end of the current lease year. The court found that in the absence of evidence of a waiver of the required notice, the lease had

converted to a year-to-year lease. *In other words, evidence of holding over and payment of rent was not, standing alone, evidence of waiver by the lessor.* Further, in denying equitable relief to lessee, the court noted that this case was not within the line of cases from other jurisdictions allowing equitable relief when notice had been given, but given late. *Id.* at 668–669, n. 3.

We note *Carsten* is a case that involved the sufficiency of the evidence necessary to establish waiver or a claim of equitable estoppel. The court held that, as a matter of law, merely holding over and the paying/accepting of rent does not create a waiver. However, the lessee also claimed the lessor knew that large expenditures had been made for mining equipment and overburden removal. *Id.* The court found the evidence was partly in conflict and otherwise insufficient to establish waiver or the right to equitable relief, i.e., did the lessors' conduct and/or knowledge of the improvements to the land require they be estopped. Additionally, there was no evidence of fraud, accident, surprise or mistake warranting the granting of equitable relief for the failure to give the required notice. *Id.* at 669. Therefore, the court affirmed the decision of the trial court.

■ In the instant case, the trial court's holding as a matter of law that the option to renew had not been exercised is not correct if there is substantive evidence of waiver and acceptance by the lessor. Here, there was evidence from which the trier of fact could conclude waiver of the required notice had been established. There was no question that the notice was given late, but before the lease expired. It is well settled in Indiana that a condition precedent may be waived. *Penmanta Corp. v. Hollis* (1988), Ind.App., 520 N.E.2d 120, 122, *reh'g denied, trans. denied* (1989); *Parrish v. Terre Haute Savings Bank* (1982), Ind.App., 431 N.E.2d 132, 135, *trans. denied* (1985); *Johnson v. Bucklen, et al.* (1894), 9 Ind.App. 154, 36 N.E. 176. In this case, the notice requirement (a condition precedent) was for the benefit of the lessor and could have been waived by the lessor.[4] Unlike in *Carsten*, there is no

---

**4.** *See also* William B. Johnson, Annotation, *Waiver or Estoppel as to Notice Requirement for*

*Exercising Option to Renew or Extend Lease,* 32

evidence of a dispute between lessor and lessees. Here, there was no dispute between the lessor and the lessee that the lease had been renewed, even though notice was given after the sixty (60) day notice period. The lessor had the right to waive or modify a condition precedent. Therefore, the trial court's giving of Instructions 6 and 7, which effectively precluded the jury from considering evidence of waiver of late notice by the lessor (as shown by Bill Powers' testimony),[5] is reversible error. Lessees are entitled to a new trial.[6]

## II. LESSEES' TENDERED INSTRUCTION NO. 2

Lessees claim the trial court erred by refusing to give its Tendered Instruction No. 2 which states:

> The leasehold interest of the property owners is to be valued as the difference between the fair market rental value of the subject premises less the contract rent to be paid over the remainder of the term of the lease.

R. 146.

On retrial, the value of the lease will be dependant upon the evidence, that is, the expert testimony as to fair market value. We presume that the trial court will give an instruction that is a correct statement of the law, is applicable to the facts, is not adequately covered by other instructions and is supported by the evidence. In light of our holding in Issue I, the question of Instruction No. 2 is now moot. Therefore, we do not address it because we do not issue advisory opinions.

We reverse and remand this case for a new trial. As per Ind.Appellate Rule 15(H), appellants shall recover costs from appellee in the court on appeal and the court below.

CONOVER and BARTEAU, JJ., concurring.

---

A.L.R.4th 452 (1984). "Many courts have stated that since the requirement to give notice exercising an option to renew a lease of real property is intended to benefit the lessor, it may be waived by the lessor, and whether a lessor has waived, or has been estopped from asserting, a notice requirement depends on the lessor's conduct under the circumstances involved." *Id.* at 456–457.

5. The testimony of the lessor which would have confirmed waiver was excluded by the trial court. The exclusion of the lessor's testimony was not raised as an issue on appeal.

6. On this issue, lessees also claim (and made objection to the instructions) that the City had no standing to challenge the terms of the lease— that is, it was a matter between the lessor and the lessee. However, it is obvious that the binding terms of the lease would be a matter of concern to a willing buyer of the lease and, therefore, would have impact on the market value at issue in this case. Certainly, the condemnor City had a right to litigate any matter affecting the market value of the lease. The lessees have failed to cite any authority for their position nor have we been able to find any. In footnote 2, we observed that, in an action where the fee is taken, the market value of the entire property is at issue and not the value of the various interests therein (such as mortgages, liens and leases). Therefore, in such a situation, the condemnor has no right to litigate the value of the interests or how the proceeds are divided among the interested parties. This, obviously, is not the case here, where the sole issue is the value of the lease.