### MATTHIAS KRAMER *vs.* JAMES M. COOK.

Under a lease for a certain term, yielding and paying a certain rent, and, at the election of the tenant, for a further term, yielding and paying an increased rent, the election of the lessee to hold for the additional term at the increased rent may be inferred from his continuing to occupy the premises and paying rent for two quarters at the increased rate, without proof of any formal election or notice to the lessor at the time of the expiration of the first term.

A lessee, who covenants to restore the premises at the end of the term "in as good order and condition, reasonable use and wearing thereof, fire and other unavoidable casualties excepted, as the same now are or may be put into by the lessor," and to pay rent during the term, is not excused from paying rent by the undermining of the partition wall by the owner of land adjoining, while building upon his own premises, after notice to the lessor of his intention to build, and the lessor's omission to support the wall; even if by the custom of the place the landlord is bound to support and secure his foundations and walls in such cases.

An averment in a declaration, that the defendant "elected to continue in the occupancy of the premises" mentioned in a written lease, for an additional term, "upon the terms and provisions therein mentioned," is a sufficient allegation that the lessee elected to hold for the additional term.

ACTION OF CONTRACT upon a lease made by the plaintiff to the defendant, on the 1st of October 1850, of a building in Atkinson Street in Boston, "to hold for the term of three years from the date hereof, yielding and paying therefor the rent of seven hundred dollars a year; and, at the election of said Cook, for the further term of two years next after said term of three years, yielding and paying for said term of two years a rent of seven hundred and fifty dollars a year. And the said lessee doth promise to pay the said rent in equal quarterly payments on the first days of January, April, July and October in

each year, and to quit and deliver up the premises to the lessor or his attorney, peaceably and quietly, at the end of the term, in as good order and condition, reasonable use and wearing thereof, fire and other unavoidable casualties excepted, as the same now are or may be put into by the said lessor, and to pay the rent as above stated, and all taxes and duties levied or to be levied thereon during the term, and also the rent and taxes, as above stated, for such further time as the lessee may hold the same."

The plaintiff, in his declaration, alleged that " the defendant elected to continue in the occupancy of the premises mentioned in said instrument for the term of two years next after the term of three years mentioned in said instrument, upon the terms and provisions therein mentioned ; and the defendant has accordingly used and occupied said premises all the time hitherto from the date of said instrument ; " and claimed rent for the quarter ending the 1st of October 1854, at the rate of seven hundred and fifty dollars a year. Writ dated October 30th 1854. Trial in the court of common pleas, before *Mellen*, C. J., who, after a verdict for the plaintiff, signed a bill of exceptions, the substance of which is stated in the opinion.

*E. A. Dana*, for the defendant.

*B. F. Brooks & J. D. Ball*, for the plaintiff.

THOMAS, J. . This is an action of contract to recover rent of a building in Atkinson Street in the city of Boston, which, as the plaintiff alleges, the defendant occupied under a written lease. The declaration is for the quarter's rent from July 1st 1854 to October 1st 1854.

To prove the election by the defendant to hold under the lease for the additional term of two years, the plaintiff produced evidence of the payment, after the expiration of three years, of two quarters' rent, at the advanced rate stipulated for in the ease in case the defendant elected to hold for the additional term ; the declarations of the defendant that he was so holding ; and a written notice, in August 1854, by the defendant to the plaintiff to put the building in repair, and that he should hold him responsible for any injury he (the defendant) might sustain by the plaintiff's neglect to repair.

1. The defendant asked the court to instruct the jury, that " to show an election by the lessee to hold for the additional term of two years after the expiration of the three years, it was necessary for the plaintiff to prove that the defendant so elected at the time of the expiration of the three years, and duly notified the lessor of his intention so to hold." But the court ruled that it was sufficient for the plaintiff to prove that the defendant made the election and continued to occupy ; and did not charge the jury that it was necessary for the plaintiff to prove that the election was made at the expiration of the three years, or that notice thereof was given by the defendant to the plaintiff.

Neither the instructions of the learned judge nor his omission to instruct furnish, we think, just ground of exception. No formal election or notice was necessary to the continuance of the lease for the additional term of two years. The continuing to occupy the premises, and the payment of the rent at the increased rate stipulated for in case of continuance, were the best possible evidence of the election of the defendant to avail himself of the further term. They were a declaration and an act— the expression of the wish and its execution. If before the payment of the rent for the first quarter of the new term any doubt could exist under what tenure the defendant was holding, the payment of the rent at the increased rate removed the doubt.

If it was necessary to prove that the election of the defendant was made at the time of the expiration of the three years, the evidence was ample for the purpose. He continued to occupy after the expiration of the three years. He paid the increased rent stipulated for from the time the three years expired. There is nothing in the case to indicate that at any time he claimed to occupy on any other terms.

The provision in the lease is not a mere covenant of the plaintiff for renewal; no formal renewal was contemplated by the parties. The agreement itself is, as to the additional term, a lease *de futuro*, requiring only the lapse of the preceding term and the election of the defendant to become a lease *in præsenti* All that is necessary to its validity is the fact of election.

Even if notice of the lessee's intent to continue might be insisted upon by the lessor, he clearly might waive it; and he clearly did waive it by the acceptance of the increased rent on the first days of April and July—an increase which could be predicated only upon such election by the lessee. Indeed, after the payment of the rent of July 1st and the receipt given therefor, and in the absence of evidence to control their effect, the question of the defendant's election to continue and of the plaintiff's assent thereto would not seem to be an open one.

2. The evidence offered by the defendant to prove that on the 1st of July 1854 the premises had become unsafe and untenantable, by reason of the undermining and settling of the partition wall by the owner of the adjoining lot, after notice by such owner to the lessor of his intention to build upon his premises, and the lessor's omission to shore up his wall, was rightly excluded.

Under the provisions of the lease, there would be no abatement or suspension of rent because of such injury to the premises. The landlord is not ordinarily bound to keep the premises in repair; nor is there anything in this lease to create such duty. *Fowler* v. *Bott,* 6 Mass. 63. *Phillips* v. *Stevens,* 16 Mass 238. *Jaques* v. *Gould,* 4 Cush. 384. *Bigelow* v. *Collamore* 5 Cush. 226. *Davis* v. *Alden,* 2 Gray, 313. By this lease, the defendant was to restore the premises at the end of the term in as good order and condition, reasonable use and wearing thereof, fire and other unavoidable casualties excepted, as they were when he took possession. The falling of the wall, by reason of not being properly shored up, would not seem to be an unavoidable casualty. The duty of repair would be on the lessee, and not the lessor. See *Jaques* v. *Gould,* 4 Cush. 388.

3. The evidence of the custom of Boston, for the owner of the premises to shore up and secure the foundation walls of his buildings, upon notice from the adjoining owner of his intention to rebuild, was rightly rejected.

If evidence of such custom were ever admissible to affect the rights of parties under written contracts, in the case at bar it was clearly immaterial; there being no provision in the lease for

abatement or suspension of rent by reason of the loss or destruc‧tion of the buildings from any cause.

4. The remaining objection to the verdict is, that there was a fatal variance between the declaration and the lease. We think it does not exist. The allegation, that " the defendant elected to continue in the occupancy of the premises for the term of two years next after the term of three years mentioned in said instru‑ment, *upon the terms and provisions therein mentioned*," is, in substance and legal effect, an averment that defendant elected to hold for the term of those two years. *Exceptions overruled.*