JAMES REED *and others v.* GEORGE A. ST. JOHN, *Trustee, &c.*

If there has been an omission to comply literally with the condition respecting notice, in a covenant for a renewal of a lease of land, equity will relieve where a fair intimation of an intention to renew has been given, and no injury has been done to the other party; but not where there has been gross laches, or the neglect has been willful.

Where one party is bound to avail himself of a covenant, to give notice within a certain time, and the other directs the notice to be sent to him by mail, it is sufficient if it is deposited in the post office within the time, though it does not reach the other party until a day or two afterward.

APPEAL by the defendants from an order made at special term.

The defendant, St. John, demised to the plaintiffs, copartners, under the firm name of Read, Gardner & Co.," the premises 52 and 54 Park Place and 49 Barclay street, for two years, from May 1, 1864, at the rent of $10,000. The lease contained this covenant, to wit: " And it is further agreed between the parties hereto, that in case the parties of the second part shall give six months' written notice previous to the expiration of this lease, of their desire to renew this lease upon the same terms for a further term of two years, this lease shall be extended or renewed accordingly."

On the 31st of October, 1865, the plaintiffs mailed a notice, signed " Gardner, Dexter & Co.," to St. John, at Norwalk,

Conn., he having moved there, notifying him of their desire to renew the lease. It was claimed that the defendant had given the plaintiffs his address there, and directed them to communicate to him by mail any matters relative to the demised premises; and told them that any letters so addressed, would reach him in twelve hours. The defendant, St. John, alleged that he gave his address merely in order that he might be notified of any needed repairs. The notice so mailed was not received until November 4th. The defendant, St. John, did not call for his rent November 1st, as was his custom, but, coming to the city for that purpose on that day, he was taken ill, and was only able to call on November 3d, and was then personally served with a copy of the notice, on his stating he had not received the one mailed. No objection was then made as to the time, manner, or sufficiency of such service, but on the 21st December, 1865, he notified the plaintiffs that, considering the use they had made of the premises by storing cotton to his prejudice, he would not accept the notice of renewal as a compliance with the lease, and, on the 19th March, 1866, he conveyed the premises to the defendant, James R. Smith, who, on that day, notified the plaintiffs to surrender the premises on May 1st, 1866.

The plaintiffs, thereupon, commenced this action, to compel a renewal of said lease, and praying for an injunction to restrain the defendants from proceeding to eject the plaintiffs from the demised premises. On a motion for the injunction, the following opinion was given at special term:

CARDOZO, J.—I have concluded, though with some hesitancy, that this is one of the cases in which the relief sought should be granted, within the rule laid down in *Rawstorne* v. *Bentley* (4 Brown's Ch. R. p. 415). The delay in giving notice was but a few days, even if the notice served by mail be laid entirely out of consideration. But it seems to me, upon a very careful consideration of the conflicting affidavits, as to the verbal authority given by the defendant to the plaintiffs to communicate with him by mail respecting the matters of the tenancy, that the plaintiffs might have been misled into the belief that the authority extended to the notice requisite to effect the renewal,

and that, therefore, a case of surprise or accident, without their fault, is presented, which calls for the interposition of the court.

Although it may be true that the service of notice would effect the contemplated extension of the lease, yet, that can only be so, when the strict letter of the covenant has been complied with.

Where equitable considerations, which cannot be available before a magistrate as a defense to proceedings to dispossess a tenant, are to be resorted to, an application to a court of equity is necessary and proper.

The injunction prayed for, will, therefore, be allowed, upon such undertaking as may be reasonable, the amount of which will be fixed upon the settlement of the order herein, and upon the further condition, that the plaintiffs stipulate that, if an appeal be taken within five days, they will, if the appellants desire, accept notice of argument for the third Monday of the present month.

From this decision, the defendants appealed to the general term.

*Hamilton W. Robinson*, for appellants, as to insufficiency of notice, cited *McDermott* v. *Board of Police* (5 Abbott Pr. 422) ; *S. C.* (25 Barb. 635) ; *Rathbun* v. *Acker* (18 Barb. 393 ; 1 Rev. Stat. 606, § 4 ; 4 Kent Com. 125). As to the equities of the case, he cited Story's Equity Jur. § 1323 ; *House* v. *Burr* (24 Barb. 525), and claimed that the plaintiffs were not free from laches.

*Stephen P. Nash* and *H. R. Cumming*, for respondents, cited *Vassar* v. *Camp* (11 N. Y. 441) ; *Rawstorne* v. *Bentley* (4 Brown Ch. 415) ; *Viele* v. *Troy & Boston R. Co.* (20 N. Y. 184) ; *Edgerton* v. *Peckham* (11 Paige, 352).

By the Court.—Daly, F. J.—The defendant, St. John, covenanted to renew if the lessees should give six months' written notice previous to the expiration of the lease, of their desire to renew it. After the covenant was made, St. John removed

from this city to the State of Connecticut, and prior to his re-
moval, he called upon the agent of the lessees, and directed him
to communicate to him at Hermitage, East street, Norwalk,
Connecticut, by mail, any matters relative to the premises which
the plaintiffs, as tenants, might desire to communicate, and in-
formed him that any letter so addressed and mailed would reach
him within twelve hours. The lease terminated on the 1st of
May, 1866, and on the 31st of October, 1865, the agent of the
plaintiff sent a written notice to the defendant, St. John, advis-
ing him that the plaintiffs desired to renew the lease for two
years longer, which he inclosed in an envelope addressed to St.
John as above stated, and put it in the post office of this city,
paying the postage. St. John left Norwalk on the 1st of No-
vember, 1865, before receiving the notice, and came to this city.
On the 4th of November he called at the plaintiffs' place of
business to collect the rent of the premises, where he saw the
plaintiffs' agent, and was informed that the notice desiring a re-
newal had been sent to him as stated, and upon the defendant,
St. John, saying that he had not received it, a copy of it was
delivered to him. It does not appear that he made any objec-
tion then that the notice had not been sent to him in time, and
on his return to his residence, on the same day, he found there
the notice which had been mailed to him.

On the 20th of December following, St. John sent a letter
advising the plaintiffs, that as he had not received any notice of
the desire of the plaintiffs to renew the lease until the 3d of
November, 1865, and, *considering the use that had been made
of the premises, by storing cotton within it to his prejudice,* he
was unwilling to accept the notices which had reached him at
too late a date to be a compliance with the provisions of the
lease. On the 15th of January following, he made a contract
for the sale of the premises to the defendant Smith, and on the
19th of March thereafter, he conveyed them to Smith.

As St. John had advised the plaintiffs, through their agent,
that any communications they had to make as tenants, respect-
ing the premises, were to be addressed to him by mail, I am dis-
posed to think that the depositing of the letter containing the
notice, in the post office of this city, addressed as he had re-

quested, and the payment of the postage, on the 31st of October, 1865, the day before the six months began to run, was a good service. Where a statute provides for the giving of notice within a certain time, and does not point out the mode in which it is to be given, it must be served upon the party in person within that time, or it must be shown that he received it within the period (*McDermott* v. *The Board of Police*, 25 Barb. 635). But where a party directs notice to be sent to him through the post office, addressed to him at his place of residence in another State, I am disposed to think that the service is good if it is deposited in the post office, as this was, within the time. It probably reached Norwalk on the following day, so as to make, in any event, but a difference of a day in a six months' notice.

It is insisted that if the notice was in time, it operated as a renewal of the lease, and that there is no ground for bringing this action. The giving of the notice would, as against the plaintiffs, charge them with the payment of rent, according to the terms of the original lease, if they remained in possession ; but if they had, as they appear to have had, by the terms of the covenant, a right to a lease for a further term of two years, upon giving notice, they might bring an action to compel the specific performance of the contract, and there was no reason why they should rest in doubt, or run any hazard as to the construction which might be put upon the sufficiency of the notice, in law, when they could be relieved in equity. Lord Redesdale, in *Lennon* v. *Napper* (2 Sch. & Lef. 682), reviewed at length the grounds upon which a court of equity will compel a specific performance of a covenant to renew an estate in land, where there has been a neglect to comply literally with the condition upon which the renewal was to be granted, and the rule to be collected from his statement is, that equity will not relieve where there has been gross laches, or the neglect was willful, but will do so where the party has acted fairly, and no injury was done to the other party by the failure to do the act required strictly within the time. The present case is within the rule laid down by this eminent judge. The plaintiffs meant to give notice in time, and in the mode which the defendant St. John had requested, and their mistake, assuming that notice was not given

within the time, resulted only in the loss of a single day, and was, at the time, productive of no injury to the defendant, for it was not until two months and a half afterward that he made a contract for the sale of the premises. He does not appear to have made any complaint when he was advised, on the 3d of November, of the notice, and the fact that he assigned an independent reason, the storing of cotton, when he advised them a month and a half afterward of his refusal, shows that the refusal was an afterthought. The fact that the notice was given in the name of the new firm, was immaterial. The defendant, St. John, knew of the change in the firm, and he had collected the rent from them. In *Maxwell* v. *Ward* (11 Price, 16), the condition was that the notice of the intention to renew was to be *in writing*, but the Lord Chief Baron Richards said that the court would relieve, notwithstanding the objection that the notice was not in writing, if it could be shown that a fair intimation of an intention to renew had been given in any way. These two cases will suffice to show the liberal principles upon which a court of equity acts where there has been a failure to give the notice of the intention to renew strictly within the time, and I think Judge Cardozo was right in holding that this was a case fairly within the rule by which they are guided.

Order affirmed.