| Sherwood *v.* Gardner. |

---

## City Court.

### *Trial Term—June*, 1884.

### JASON H. SHERWOOD, Executor, &c., *against* ROBERT B. GARDNER et al.

**Renewal of lease. Special partnership. Steam power. Damages.**
Where a lease is made for two years with the privilege of renewal, and the tenant in due time serves the requisite notice of an election to take the renewal, the original lease is thereby continued in force for the new term. No formal renewal instrument is necessary. When the lease is renewed the tenant is liable for the rent, whether he occupies the premises or not; but with regard to steam power which the defendant was to receive, the rule is different. The actual loss to the landlord in consequence of the tenant's failure to receive the steam power is in such a case the basis of compensation, and this must be proved.

*I. T. Williams*, for plaintiff.

*Goodrich, Deady & Platt*, for defendants.

McAdam, Ch. J.—By the terms of the agreement set out in the complaint, the plaintiff's testator leased to "Garden & Co.," a firm composed of the defendants, a room on the first floor of 292 and 294 Monroe street, and two lofts, 290, 292 and 294 Monroe street, with certain horse-power;

Sherwood v. Gardner.

for two years from May 1, 1881, at $3,800 per year, payable monthly. The lease also contained provisions as to the rate of compensation for the horse-power. The agreement likewise contained the following provisions, viz. : "Garden & Co. are to have four yearly renewals of this agreement." (2) "At the end of two years, all renewals are to be made at the rate of $60 per horse-power yearly and $1,600 for the rooms."

The first question presented is whether this agreement is to be treated as a continuous lease for six years or as a demise for two years with the privilege to the tenants (at their option) of four yearly renewals at the new rental specified. The phrase, "Garden & Co. are to have four yearly renewals of this agreement," in order to make effective the evident intent of the parties, must be construed to mean that Garden & Co. are to have the privilege of the four renewals if they elect to take them (Bruce v. Fulton Nat. Bank, 79 N. Y. 154). So construed, the lease expired May 1, 1883, unless the right to renew was exercised by the defendants in such manner as to continue the lease. The plaintiff claims that the defendants did exercise this privilege, and that, by force of the notice which will be referred to hereafter, the lease was continued for another year—to wit, from May 1, 1883, till May 1, 1884. The action is brought on this theory to recover the rent for May and June, 1883, amounting to $266.66, and the further sum of $400 for the use of forty horse-power of steam at the rate of $60 for each horse-power, making the total sum claimed $666.66. The notice claiming the renewal is in these words :

"New York, March 7th, 1883.
"Executors of the Nelson Sherwood estate.
    Dear Sir :
    "Pursuant to the option contained in the contract between us, dated March 11th, 1881, we hereby elect to continue that contract for the term of one year from

May 1st, 1883. We will be pleased to have an amicable settlement of the outstanding account.

"Yours very truly,

"GARDNER & DUDLEY,

"Lately Garden & Co."

Gardner and Dudley, whose names are appended to this notice, were, with the defendant Garden, the members of the old firm of Garden & Co., which was dissolved on or about the 31st of October, 1881, by the retirement of Mr. Garden, as a general partner. Upon the following day the old firm was re-organized on a new basis. Gardner and Dudley became the general partners, and Garden the special, having contributed as such to the capital, $100,000 in cash. In the re-organized firm, the defendants adopted "Gardner & Dudley" as the firm title. The re-organized firm succeeded to the business and property of the old firm, and continued the occupation of the demised premises under the original lease, until it expired on May 1, 1883. The notice of election to take a renewal of the lease for another year was served upon the plaintiff on the day it bears date (March 7, 1883), and the legal effect of such election was to make the lease continuous for three years from May 1, 1883, as much so as if the words "three years" instead of two had been inserted in the original demise (Kramer v. Cook, 73 Mass. 550; Delashman v. Berry, 20 Mich. 292; Orton v. Noonan, 27 Wisc. 272; Id. 300; Paulet v. Cook, 44 N. H. 512; Chretion v. Doney, 1 N. Y. 419; House v. Burr, 24 Barb. 525).

The notice of election to renew is signed "Gardner & Dudley," but the title represents the three defendants. They could not well have signed the name of "Garden & Co.," because that designation had been previously transformed into that of Gardner & Dudley. The change of firm or designation did not relieve Garden from his obligation. He was personally liable on the lease in the

first instance, and he still continued his interest in the lease. The general partners of the firm, by his implied assent having elected to continue the lease pursuant to its provisions, asserted in a legal way their firm's right to the renewal. The lease with the privilege of renewal was an asset placed in the hands of the new firm by the act of Garden. He gave them (impliedly at least) the power of continuing it, knowing that he was jointly liable thereon while it continued in force according to its provisions. He expressed no dissent to the act of his partners. The absence of his name from the notice to renew was not (under the circumstances) calculated to create suspicion. No objection to it was raised by the plaintiff, and the notice was regarded by all the parties as in proper form (see Reed *v.* St. John, 2 *Daly*, 218). No further writings were necessary, and the fact that several meetings were had with reference to drafting a new lease or settling previous disputes as to the amount of steam power chargeable during the first term does not alter the cardinal fact that the defendants had already by their notice continued the old lease at the new rent for another year (see Luke *v.* Hake, 5 *Daly*, 15). Nothing was said or done at these meetings to release the defendants, and the letter of Mr. Williams of March 27, 1883, indicates in an expressive manner that the defendants were not to consider themselves released from their election to continue the lease for another year. The defendants claim that subsequently to sending the election to renew for another year they notified the plaintiff that they recalled the notice. But the election had already ripened into a new contract which could not be recalled or rescinded except by the mutual agreement of the parties. Such a release or rescission is neither pleaded nor proved. Surrender, in fact or by act or operation of law, is not pleaded. Vacating the premises on May 1, 1883 (if the lease was legally renewed for another year) does not amount to such a surrender and acceptance as will relieve the defendants

from the extended contract (Thomas *v.* Nelson, 69 *N. Y.* 118).

Upon the facts stated, the defendants are liable for the rent for May and June, 1834, amounting to $266.66. The rent for the first two years was payable monthly, and this provision regulates the mode of payment during the continuance of the lease, whether by renewals or otherwise.

As to the steam-power a different question arises. The defendants did no business on the premises after May 1, 1883; so that they did not receive the use of the steam-power for which they agreed to make compensation. Under such circumstances, the contract being executory, the measure of damages is not necessarily the whole amount agreed to be paid, but a just recompense for such injury as the party has sustained on account of the breach of the agreement (Clark *v.* Marsiglia, 1 *Den.* 317). In such a case, the actual loss is the basis of compensation. The provisions of the lease in respect to compensation are divisible. So much is to be paid for rent and a specific amount for horse-power.

As to the rent, the plaintiff gave the defendants the right to occupy his premises; he was to do no more. Whether or not the defendants enjoyed the privilege to the best advantage is of no consequence to him. He gave all he agreed to give them. But the furnishing of steam-power daily involves continuous acts of labor on the part of the plaintiff, and when relieved of this duty the law is satisfied if the actual loss or injury is made good. No legal measure of damage as to the steam-power has been furnished. The actual damages may be equal to the contract price, but not necessarily or presumably so, and hence they must be established by proofs. The only damages which can be allowed on this branch of the case, on the present proofs, will be nominal damages of six cents.

For these two amounts, aggregating $266.72, with

$15.96 interest, making in all $282.68, the plaintiff is entitled to judgment.

Affirmed by city court and by common pleas general term.