

FILED

Mar 25 2015, 9:17 am

CLERK
of the supreme court,
court of appeals and
tax court

| ATTORNEYS FOR APPELLANT | ATTORNEYS FOR APPELLEE |
|---|---|
| Sean M. Clapp | David B. Honig |
| Ian T. Keeler | Andrew B. Howk |
| Clapp Ferrucci | Hall Render Killian Heath & Lyman, PC |
| Fishers, Indiana | Indianapolis, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Norris Avenue Professional Building Partnership, | March 25, 2015 |
| *Appellant-Plaintiff,* | Court of Appeals Case No. 40A01-1408-PL-349 |
| v. | Appeal from the Jennings Circuit Court |
| Coordinated Health, LLC, | The Honorable Jon W. Webster, Judge |
| *Appellee-Defendant.* | Cause No. 40C01-1106-PL-127 |

**Najam, Judge.**

## Statement of the Case

[1]     Norris Avenue Professional Building Partnership ("Norris") appeals the trial court's judgment for Coordinated Health, LLC ("Coordinated Health") on Norris' complaint for breach of a lease agreement. Norris raises a single issue for our review, namely, whether the trial court erred when it concluded that

Coordinated Health did not breach the lease agreement. We reverse and remand with instructions.

## Facts and Procedural History

On April 29, 2002, Norris and Coordinated Health entered into a lease agreement whereby Coordinated Health agreed to lease certain real property from Norris.[1] The parties' lease provided for an "initial term" of two years to be followed by two "option terms" of five years each. Appellant's App. at 13. In particular, the lease stated in relevant part as follows:

> Section 2.1 Initial Term. The initial term of this Lease shall be for a period of two (2) years . . . commencing on May 1, 2002, and terminating on April 30, 2004. In the event that [Coordinated Health] wishes to exercise either of the option terms set forth in Section 4.1, at least sixty (60) days prior to the end of the initial term or the first option term, as the case may be, [Coordinated Health] shall give written notice to [Norris] of intent to exercise the option. In the event [Coordinated Health] does not provide such notice, then this Lease will terminate at the end of the then[-]current term unless [Norris] and [Coordinated Health] agree otherwise.

> * * *

> Section 4.1 Minimum Annual Rent. [Coordinated Health] covenants and agrees to pay . . . as rent for said Premises . . . the sums as set for[th] below: $2250.00 per month beginning May 1,

---

[1] Unhelpfully, in its brief on appeal Norris cites sixty-six pages of its appendix in support of this basic fact. A simple citation to page 13 of the appendix would have sufficed.

2002[,] in advance on the first day of each calendar month of the term . . . .

Rent for the 1st five (5) year option term will be $2,300/month for the 1st year, $2,350/month for the 2nd year, $2,400/month for the 3rd year, $2450/month for the 4th year, and $2,500/month for the 5th year.  In the event [Coordinated Health] exercises its option for the 2nd five (5) year option term, rent per month for the 1st year of the second option term shall be calculated by taking the monthly rent for the 6th year of the 1st option term and increasing said monthly rental by the change in the CPI-Urban [the Consumer Price Index for Urban Consumers] for the twelve month period ending three (3) months prior to the beginning of the 1st year of the 2nd option term.  For each year of the 2nd option term thereafter, the monthly rental amount shall be increased by the change in the CPI-Urban for the twelve (12) month period ending three (3) months prior to the beginning of said year.

* * *

Section 14.1 Surrender of Premises.  At the end of the term or any renewal thereof or other sooner termination of this Lease, [Coordinated Health] will peaceably deliver to [Norris]possession of this Premises . . . .

* * *

Section 15.1 Waiver.  The waiver (or failure to insist upon strict performance) by [Norris] or by [Coordinated Health] of any term, covenant, or condition herein contained shall not be deemed to be waiver of such term, covenant, or condition or any subsequent breach of the same or other term, covenant, or condition contained herein. . . .

*Id.* at 13-15, 21-22.

[3] Coordinated Health did not provide Norris with notice that it intended to exercise the first option term within sixty days of the expiration of the initial term. Nonetheless, Coordinated Health did not surrender the premises upon the end of the initial term, and it paid rent to Norris for the entirety of the first option term in amounts equivalent to those delineated in the lease for the first option term.

[4] As the end of the first option term approached, Coordinated Health did not provide Norris with notice that it intended to exercise the second option term within sixty days of the expiration of the first option term. Nonetheless, Coordinated Health did not surrender the premises upon the end of the first option term, and, for a time, it paid rent to Norris in amounts equivalent to those delineated in the lease for the second option term. The second option term was scheduled to end on April 30, 2014.

[5] In October of 2010, Coordinated Health informed Norris that it would terminate its tenancy as of April 30, 2011. The parties were unable to successfully negotiate a termination agreement, and, by April 30, 2011, Coordinated Health had surrendered the premises and paid all rents due up to that time.

[6] On June 7, 2011, Norris filed suit against Coordinated Health. Norris alleged that Coordinated Health had breached the parties' lease agreement and that Coordinated Health owed Norris a sum equivalent to the balance of rent from

May 1, 2011, through April 30, 2014, or the remainder of the second option term. After the trial court denied the parties' respective motions for summary judgment, the parties entered a joint stipulation of facts and moved for judgment without an evidentiary hearing. On June 2, 2014, the trial court entered a general judgment for Coordinated Health. Thereafter, the court denied Norris' motion to correct error. This appeal ensued.

# Discussion and Decision

## *Standard of Review*

Norris appeals the trial court's judgment for Coordinated Health. But the parties initially dispute our standard of review. Norris asserts that our standard of review is de novo, while Coordinated Health asserts that we must review the trial court's judgment under the clearly erroneous standard. Norris is correct.

This appeal involves only a written contract and a written, joint stipulation of facts. It is well established that, where "only a paper record has been presented to the trial court, we are in as good a position as the trial court . . . and will employ de novo review . . . ." *Munster v. Groce*, 829 N.E.2d 52, 57 (Ind. Ct. App. 2005); *see also Houser v. State*, 678 N.E.2d 95, 98 (Ind. 1997) (holding that, where "both the appellate and trial courts are reviewing the paper record . . . , there is no reason for the appellate courts to defer to the trial court's finding . . . ."). The clearly erroneous standard, on the other hand, is "our usual review . . . when the trial court is in the unique position of determining

the . . . facts." *Anderson v. Wayne Post 64, Am. Legion Corp.*, 4 N.E.3d 1200, 1206 n.6 (Ind. Ct. App. 2014), *trans. denied*.

[9]     Those basic principles aside, Coordinated Health asserts that the clearly erroneous standard applies "when facts are stipulated to by the parties and entered into evidence by the trial court." Appellee's Br. at 8. In support, Coordinated Health cites *England v. Alicea*, 827 N.E.2d 555, 558 (Ind. Ct. App. 2005). In *England*, this court reviewed whether the trial court erred in its partition of certain real property, and we stated:

> Where, as here, the trial court enters specific findings of fact and conclusions of law, we employ a two-tiered standard of review. First, we determine whether the evidence supports the findings; then we determine whether the findings support the judgment. *Butler Univ. v. Unsupervised Estate of Verdak*, 815 N.E.2d 185, 190 (Ind. Ct. App. 2004). However, *inasmuch as stipulated facts are conclusive upon both the parties and the tribunal, the findings of fact may not be challenged upon appeal*. *Wayne Township v. Lutheran Hosp. of Fort Wayne, Inc.*, 590 N.E.2d 1130, 1133 (Ind. Ct. App. 1992). Thus, we will only look to the conclusions of law and whether the findings and conclusions support the judgment. We will consider only the evidence and reasonable inferences flowing therefrom that support the trial court's judgment, and we will not reweigh the evidence. *Id.* We will only disturb the judgment if we determine that it is clearly erroneous, meaning that there are no facts or inferences supporting it. *Id.* A judgment is clearly erroneous when a review of the record leaves us with a firm conviction that a mistake has been made. *Id.*

*Id.* (emphasis added).

[10] *England* does not control here for two significant reasons. First, *England* does not hold that the clearly erroneous standard of review applies when only a paper record is at issue on appeal. Rather, as relevant here *England* merely noted that factual stipulations may not later be challenged on appeal. *Id.*; *see also Wayne Township*, 590 N.E.2d at 1133 ("stipulated facts are conclusive upon both the parties and the tribunal, and . . . a party cannot properly challenge facts on appeal which it has stipulated to below"). Thus, we do not agree with Coordinated Health's reading of *England*. Neither *England* nor *Wayne Township*, the case *England* relied on, state that we are obliged to apply the clearly erroneous standard of review to a paper record.

[11] Second, no party to the instant appeal challenges the stipulated facts, and, unlike in *England*, the trial court here did not enter findings of fact and conclusions thereon following a bench trial. Indeed, nothing about the court's judgment in the instant matter indicates that the court acted as a fact finder or in any way applied its unique position to determine any facts. *See Anderson*, 4 N.E.3d at 1206 n.6. In other words, nothing about this appeal suggests that the trial court was in a better position than this court to address the facts and the law. As such, we owe the trial court no deference in our review. *See, e.g., Houser*, 678 N.E.2d at 98; *Munster*, 829 N.E.2d at 57.

### *Arguments on Appeal*

[12] Turning to the arguments on appeal, we first briefly reject Coordinated Health's argument that we must affirm the trial court's judgment because Norris did not file a brief in the trial court in support of the parties' request for judgment and,

therefore, Norris "fail[ed] to carry its burden of proof."  Appellee's Br. at 9.

According to the CCS, on April 21, 2014, "both counsel agreed to file

memorand[a] by 5/12/2014 and responsive memorand[a] by 5/27/2014" with

respect to the request for judgment.  Appellant's App. at 7.  While the record is

clear that Norris did not file a brief after that date, the record is also clear that

Norris had already filed a brief in support of its motion for summary judgment,

and neither Norris' arguments nor the underlying facts had changed since

Norris had filed that brief.  Indeed, Norris did file a responsive memorandum

on May 30, which the trial court accepted, and in which Norris explicitly

asserted that the matter had been fully briefed on summary judgment, that all

pertinent facts had been stipulated, and that there had been "no change in the

facts, the law that pertains to these facts[,] or any other matter since the

respective Motions for Summary Judgment were filed."  *Id.* at 138.  Thus, we

reject Coordinated Health's theory that Norris failed to carry its burden of proof

simply because Norris did not file a redundant brief.[2]  The issues raised by

Norris on appeal were fairly before the trial court when it entered its judgment,

and we will consider those issues accordingly on appeal.  *See, e.g.*, *Showalter v.*

*Town of Thorntown*, 902 N.E.2d 338, 342 (Ind. Ct. App. 2009), *trans. denied*.

---

[2]  We also reject Coordinated Health's assertion that holding it to the lease would violate the statute of frauds, an assertion that has long been rejected by this court. *E.g.*, *Thurston v. F.W. Woolworth Co.*, 66 Ind. App. 26, 117 N.E. 686, 688 (1917).  Moreover, Coordinated Health's assertion that the waiver provision of the parties' lease agreement somehow precludes Norris' arguments is not supported by cogent reasoning, and we do not consider it.  Ind. Appellate Rule 46(A)(8)(a).

[13] We thus turn to the merits of Norris' claim, namely, whether at the time Coordinated Health surrendered the premises it was responsible to pay rent for the entirety of the second option term. In support of its position, Norris asserts that Coordinated Health had taken affirmative steps to demonstrate its exercise of both options notwithstanding Coordinated Health's failure to provide notice to Norris sixty days before the exercise of each option. Coordinated Health, on the other hand, asserts that the sixty-day notice was a material condition precedent to the exercise of each option, and Coordinated Health's failure to give written notice made it a holdover tenant following the end of the initial term.

[14] Norris first discusses whether the options provided for in the parties' lease were options to extend or options to renew the lease. But we have previously rejected this distinction on similar facts, namely, where a lease required sixty-days notice from the lessee to the lessor to exercise an optional term for the lease. As we explained:

> Under Indiana law, if a lessee has a privilege or option to extend under the lease, a mere holding over and payment of rent will be sufficient to exercise the privilege. However, if the lessee has an option to renew, a mere holding over and payment of rent will not be sufficient to exercise the option to renew. *Fragomeni v. Otto Gratzol Signs* (1951), 121 Ind. App. 167, 96 N.E.2d 275; *G.S. Suppiger Co. v. Summit Gas & Water Co.* (1949), 119 Ind. App. 102, 84 N.E.2d 207. The Indiana cases give little guidance as to the reason for this distinction. The rule seems to have developed in Indiana as an aid to the courts in determining the intention of the parties regarding the effect of holding over when there was some right in the lessee to a further term but no express contract

provision regarding the effect of holding over. *See C. Callahan Co. v. Michael* (1910), 45 Ind. App. 215, 218-19, 90 N.E. 642, 643 (stating that ["]an option of a renewal would seem to imply that the parties contemplated some affirmative act by way of the creation of an additional term.["]). However, the lease at issue, whether construed as an option to extend or an option to renew, clearly required notice to the lessor of an intention to exercise the option before expiration of the current term. This notice requirement evidences an intent of the parties that there was to be no 'extension' or 'renewal' of the lease without the required notice. *Regardless of whether the trial court construed the instant lease to contain an option to renew or an option to extend, the need for making the distinction has been eliminated by the notice requirement.* We conclude that the giving of the required notice is a condition precedent to the right of renewal. In the absence of any right to equitable relief, the right of 'renewal' or 'extension' is lost if the notice is not given. *Thus, if notice is stipulated in the lease, it must be given regardless of whether the lease provides for an option to extend or an option to renew.* Since the lease at issue required notice 'in person or by certified mail' and no such notice was given, *the mere holding over and payment of rent was not sufficient notice under the contract. The reasoning behind demanding exact compliance with the terms of the option including the notice provision is that the lessor is bound to grant the additional term while the lessee is free to accept or reject it. Thus, the courts will not hold the lessor to his promise any longer than he has agreed to be held. Sosanie v. Pernetti Holding Corp.* (1971), 115 N.J. Super. 409, 279 A.2d 904, 908; *University Realty & Development Co. v. Omid-Gaf, Inc.* (1973), 19 Ariz. App. 488, 508 P.2d 747, 749.

*Carsten v. Eickhoff*, 163 Ind. App. 294, 299-300, 323 N.E.2d 664, 667-68 (1975)

(emphases added; footnotes omitted). But we made it a point in *Carsten* to note

that that case was "not within the line of cases in which the lease calls for a

higher rent during the second term and the lessee holds over paying the higher

rent." *Id.* at 669 n.3 (*citing Kramer v. Cook*, 73 Mass. 550, 550 (1856)); *see also*

*Pearman v. Jackson*, ___ N.E.3d ___, 2015 WL 388389 at *8 (Ind. Ct. App. 2015)

(holding that, where the rent payments during the original and extended terms

were the same, the lessees' "payment of rent and continued occupation of the

leased premises standing along was insufficient . . . to establish that they had

exercised their option to renew the lease for an additional term . . . ."), *not yet*

*certified*.

[15]   In another case, we considered whether a lessee had tendered effective notice to

the lessor when the notice was untimely under the lease but the lessor treated

the notice as if it were timely.  We stated:

> We note *Carsten* is a case that involved the sufficiency of the
> evidence necessary to establish waiver or a claim of equitable
> estoppel.  The court held that, as a matter of law, merely holding
> over and the paying/accepting of rent does not create a
> waiver. . . .
>
> In the instant case, the trial court's holding as a matter of law
> that the option to renew had not been exercised is not correct if
> there is substantive evidence of waiver and acceptance by the
> lessor.  Here, there was evidence from which the trier of fact
> could conclude waiver of the required notice had been
> established.  There was no question that the notice was given
> late, but before the lease expired.  *It is well settled in Indiana that a*
> *condition precedent may be waived.  In this case, the notice requirement*
> *(a condition precedent) was for the benefit of the lessor and could have*
> *been waived by the lessor.*  Unlike in *Carsten*, there is no evidence of
> a dispute between lessor and lessees.  Here, there was no dispute
> between the lessor and the lessee that the lease had been
> renewed, even though notice was given after the sixty (60) day

notice period. *The lessor had the right to waive or modify a condition precedent. . . .*

*Powers v. City of Lafayette*, 622 N.E.2d 1311, 1314-15 (Ind. Ct. App. 1993) (emphases added; citations and footnotes omitted), *trans. denied*. Moreover, "[i]t has long been the law in this state that the performance of a condition precedent may be waived in many ways. One such way is by the conduct of one of the parties to the contract." *Harrison v. Thomas*, 761 N.E.2d 816, 820 (Ind. 2002) (citations, quotations, and alterations omitted).

[16] Applying that case law here, the notice provision in the instant lease was a condition precedent to Coordinated Health's exercise of either option term. *Carsten*, 323 N.E.2d at 667-68. However, that condition precedent existed for the benefit of Norris and, therefore, Norris had the right to waive Coordinated Health's compliance with the condition precedent. *Powers*, 622 N.E.2d at 1314-15. In lieu of the condition precedent, Norris had the right to accept another affirmative act by Coordinated Health, beyond Coordinated Health's merely holding over and paying the same rent it had been paying, as evidence of Coordinated Health's intent to exercise the option terms. *See, e.g.*, *Fragomeni*, 96 N.E.2d at 278 ("where the lease gives the privilege of renewal[,] the lessee, by some affirmative act, must indicate his election to exercise the option prior to the expiration of the lease"); *see also C. Callahan Co.*, 90 N.E. at 643 ("an option of a renewal would seem to imply that the parties contemplated some affirmative act by way of the creation of an additional term.").

[17] Norris' right to waive the condition precedent is also supported by the waiver provision of the parties' lease agreement, which contemplates, but also limits, the operation and effect of a party's failure to insist on strict performance of a condition by the other party. That provision states that the failure to insist on strict performance of any term, covenant, or condition shall not constitute the waiver of "any subsequent breach of the same or other term, covenant, or condition." Here, this means that Norris' failure to insist upon Coordinated Health's performance of the written notice requirement for the first and second option terms is limited and does not operate as a waiver of Coordinated Health's obligation to pay rent and otherwise perform under the second option term at issue.

[18] Still, to hold Coordinated Health to the option terms absent Coordinated Health's exercise of the conditions precedent, as a matter of law Norris had to accept an affirmative act by Coordinated Health beyond Coordinated Health's merely holding over and paying the same rent it had paid during the initial term. *See, e.g.*, *Fragomeni*, 96 N.E.2d at 278; *see also C. Callahan Co.*, 90 N.E. at 643. With that in mind, the stipulated facts sufficiently demonstrate that Norris failed to insist upon Coordinated Health's strict performance with the notice requirements, but, in lieu of those notices, Norris instead accepted Coordinated Health's increased rent payments.

[19] Thus, we agree with Norris that Coordinated Health took an affirmative act to demonstrate its intent to exercise each of the two options. In *Carsten*, we acknowledged that "the mere holding over and payment of rent was not

sufficient notice." 323 N.E.2d at 668. But in *Carsten*, and unlike the instant case, the rent-payment provisions during the initial term and the option terms were identical. *Id.* at 669 n.3. This distinction is material because nothing about the lessee holding over in *Carsten* would have informed the lessor of the lessee's intent to exercise the option term. Indeed, had Coordinated Health's failure to strictly comply with either of the notice requirements made Coordinated Health a holdover tenant, as it asserts on appeal, Coordinated Health's rent obligation during the period after the initial term would have been the same as it was during the initial term. As we have explained: "when a tenant holds over past the term of his lease, the lease is renewed. The renewed lease contains the same terms, and is subject to the same conditions, as the original lease." *City of Bloomington v. Kuruzovich*, 517 N.E.2d 408, 411 (Ind. Ct. App. 1987) (citations omitted), *trans. denied*.

[20]     But that is not what happened here. Instead of paying rent in accordance with "the same terms . . . as the original lease," *id.*, Coordinated Health instead paid rent payments to Norris in accordance with the rent-payment provisions of each of the option terms. And the rent-payment provisions for the option terms required an annual increase in Coordinated Health's monthly rent obligation; that is, each year of the option terms required an increase in the rent payment relative to the prior year. This created a substantial financial difference from what a holdover would have paid: at the end of the first option term alone, Coordinated Health had paid $9,000 more to Norris than a holdover would have paid under the terms of the initial rental period. This affirmative conduct

by Coordinated Health in making increased rent payments demonstrated its intent to be held to the option terms.

[21]     Further, Norris had a right to rely on Coordinated Health's apparent exercise of the option terms. Not only did Coordinated Health act in a manner consistent with the exercise of each option term, it also acted in a manner inconsistent with that of a holdover. Had it acted in a manner consistent with a holdover—namely, by paying the rent a holdover would have paid—Norris would have been immediately aware of Coordinated Health's intent and could have responded as it deemed appropriate. Coordinated Health may not now, well after the fact, claim to be a holdover during the same time in which it deprived Norris of the opportunity to treat it like a holdover.

[22]     In sum, we agree with Norris that Coordinated Health demonstrated its intent to exercise the lease agreement's option terms and, as such, Coordinated Health is bound by those terms. Although Coordinated Health did not satisfy the condition precedent of providing the contractual notice to exercise the option terms, it manifested its intent by its affirmative act of paying the option terms' rent payments, which were materially different than the initial term's rent payments. And Norris waived the condition precedent when it accepted those payments in lieu of the notices. Accordingly, we reverse the trial court's judgment for Coordinated Health and remand with instructions that the court enter judgment for Norris and hold any further proceedings as appropriate.

[23]     Reversed and remanded with instructions.

Mathias, J., and Bradford, J. concur.