## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D),
this Memorandum Decision shall not be
regarded as precedent or cited before any
court except for the purpose of establishing
the defense of res judicata, collateral
estoppel, or the law of the case.



FILED

Nov 07 2018, 7:57 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

---

APPELLANT PRO SE

Curtis Pearman
Naples, Florida

ATTORNEYS FOR APPELLEES

John R. Maley
Leah L. Seigel
Indianapolis, Indiana

---

### I N   T H E
# COURT OF APPEALS OF INDIANA

---

Curtis Pearman, d/b/a Forest
Park-Pearman,

*Appellant-Plaintiff,*

v.

Rande Martin and R.L. Martin
Associates, Inc. d/b/a
Management Recruiters of
Richmond,

*Appellees-Plaintiffs*

November 7, 2018

Court of Appeals Case No.
18A-CC-239

Appeal from the Wayne Superior
Court

The Honorable Gregory A. Horn,
Judge

Trial Court Cause No.
89D02-1508-CC-524

**Altice, Judge.**

**Case Summary**

Curtis Pearman d/b/a Forest Park-Pearman (Pearman) leased commercial property to Rande L. Martin and R.L. Martin Associates, Inc. d/b/a Management Recruiters of Richmond (collectively, Martin).  Pearman, pro se, appeals from the trial court's entry of summary judgment in favor of Martin. On appeal, Pearman presents nine issues, which we consolidate and restate as the following two:

1.  Did the trial court err in concluding that Martin did not exercise the option to extend the lease agreement between the parties?

2.  Did the trial court err in concluding that the status of Martin's holdover tenancy at the time of termination was month-to-month and that therefore, Martin provided sufficient notice for terminating his tenancy of the leased premises?

We affirm in part, reverse in part, and remand with instructions.

## Facts & Procedural History[1]

In April of 2006 Martin was a commercial tenant in the Forest Park Building when it was purchased by Pearman.  In January 2008, the parties entered into a

---

[1] Pearman's statement of facts consists of a list; it is not presented in narrative form as required by Ind. Appellate Rule 46(A)(6)(c).  Spanning nearly fifteen pages, Pearman's statement of the case is more akin to a statement of facts, albeit that it is not stated in accordance with the standard of review and it includes argument and facts not pertinent to the issues on appeal.  Pearman also did not set out the course of proceedings, *see* App. R. 46(A)(5), nor did he include the chronological case summary in his appendix as required by Ind. Appellate Rule 50(A)(2)(a).  We remind Pearman that pro se litigants are held to the same legal standards as licensed attorneys and are bound to follow the established rules of procedure.  *See Evans v. State*, 809 N.E.2d 338, 344 (Ind. Ct. App. 2004), *trans. denied*.

written lease agreement (the Lease) whereby Martin leased office space located in the Forest Park Building from Pearman. The Lease was for a period of thirty-eight months, running from February 1, 2008 through March 31, 2011. The Lease also contained provisions to automatically adjust the base rent rate annually to account for inflation and cost of living changes. The parties agreed that annual increases in rent would be tied to the Non-Seasonally Adjusted Consumer Price Index for All Urban Consumers (CPI) and that, utilizing the November CPI number, an increase in rent for the upcoming year would take effect in January. Section 4 of the Lease provided that the Lease could be extended beyond the initial term:

> The Lessee shall have the option to extend the term of this lease for one (1) additional five (5) year period upon the same terms, conditions and provisions contained herein, including the payment of minimum annual rent indexed to the CPI[] base. … [Martin] must give [Pearman] written notice of its intention to exercise the option to extend the term of this lease one hundred eighty (180) days prior to the expiration of the initial term herein.

*Appellant's Appendix Vol. 4* at 3. Martin did not provide the required 180-day notice to extend the lease term.

[4] In February 2011, Pearman inquired as to whether Martin intended to remain as a tenant beyond the expiration of the Lease on March 31, 2011. Martin responded, "Our preference is to remain in our current space. However, we cannot sustain present cost levels and are exploring other options." *Appellant's Appendix Vol. 5* at 27. Martin indicated that he desired a rent reduction, a

reduction in other maintenance expenses, and a renewal term of three years rather than the five years provided for in Section 4 of the Lease.

[5] Thereafter, the parties exchanged emails regarding possible changes to the Lease going forward or an entirely new lease. On March 28, 2011, Pearman sent a message to Martin offering to reduce the rent by $100.00 per month. Martin did not respond to Pearman's reduced rent offer. After the Lease expired, Martin remained in the office space and continued paying rent under the terms of the Lease, including the annual increase based on the CPI.

[6] The parties continued to negotiate lease terms through an exchange of emails. Martin continued to seek a reduction in rent and other expenses and a shorter extension period, and Pearman indicated that he would consider Martin's requests, but that it would "be on an addendum." *Appellant's Appendix Vol. 4* at 41. Martin responded that he "would prefer a new lease agreement" but would accept the changes through an addendum if they could reach an agreement. *Id.* at 13. According to Martin, he and Pearman were close to an agreement in June 2011 that called for a rent reduction of $175 per month, but they could not agree on a renewal term.

[7] On July 15, 2011, Pearman sent a message and attached for Martin's signature an "Addendum" that provided for a reduction to Martin's rent.[2] *Id.* at 15. In a subsequent email to his property manager, Pearman indicated that he had not

_____

[2] The Addendum is not in the record, but Pearman summarized the contents in the body of his email.

yet provided "a new written Lease" to Martin. *Id*. at 16. On August 31, 2011, Pearman indicated in yet another email to his property manager that there was "not yet a new Lease" with Martin and that a "new agreement including his reduction in rent was offered contingent upon him being current" with his lease payments. *Id*. at 17.

[8]     On November 1, 2011, Pearman stated in an email to Martin, "I have finally found the time and energy to prepare the lease that I promised to get to you". *Id*. at 18. In the body of the email, Pearman noted that the new lease agreement included a rent reduction and that, per Martin's request, the term length had been "reduced". *Id*. Martin did not sign the new proposed lease agreement because he wanted to further discuss some of the provisions with Pearman.

[9]     On January 4, 2012, Pearman sent an email to Martin, noting that the "proposed lease offer expired when [he] did not receive [Martin's] timely acceptance of that proposal." *Id*. at 40. Pearman further pointed out that he had "already temporarily both decreased [Martin's] rent and waived . . . late payment fees, absorbed several costs such as HVAC service/repairs" and incurred additional building expenses, a portion of which Martin should have been responsible for as a tenant. *Id*. Pearman informed Martin that he would not consider "any further concessions to the terms of our existing lease agreement. So, the remaining approximate 4 years of the lease can stay as it is currently configured." *Id*. No further discussions were had between the parties.

[10] On January 24, 2012, Pearman's property manager sent a letter to Martin advising him of the annual increase in rent as calculated in the same manner as prior years under the terms of the Lease. Thereafter, Martin paid the increased amount and remained in possession of the leased premises throughout 2012. On April 27, 2013, Martin sent a letter to Pearman in which he provided notice that he was going to vacate the premises as of May 31, 2013. Pearman was unsuccessful in finding a new tenant for the commercial space previously rented by Martin.

[11] On August 12, 2015, Pearman filed suit against Martin. Both sides moved for summary judgment.[3] The trial court held a hearing on the cross-motions for summary judgment on August 4, 2016. In an order dated November 14, 2016, the trial court granted partial summary judgment in favor of Martin, noting that "[t]here really is no dispute between the parties as to the relevant facts" and that Martin "did *not* exercise the option to renew the [Lease]." *Appealed Orders* at 5, 9 (emphasis in original).[4] Pearman filed a motion to correct error. After a hearing, the trial court issued an order in which it rejected Pearman's argument that Martin exercised the option to extend the Lease by paying the annual increased rent.

---

[3] Pearman did not include the parties' competing motions for summary judgment and their respective responses, their designations of evidence, or any briefs in support of their positions in his appendix. *See* Ind. Appellate Rule 50(A)(2)(f) ("[t]he appellant's Appendix shall contain . . . pleadings . . . that are necessary for resolution of the issues raised on appeal).

[4] Pearman filed the trial court's orders under separate cover, titled *Appellant's Appealed Orders*, but did not sequentially number the pages within this volume. Where necessary, we cite to the electronic page number.

[12]     The parties then filed cross-motions for summary judgment on the nature of Martin's holdover tenancy. The trial court held a hearing to consider these motions on December 7, 2017. In an order dated December 21, 2017, the trial court granted Martin's motion for summary judgment and denied Pearman's motion for summary judgment. Specifically, the trial court determined that where a tenant holds over following a multi-year lease, the result is a fixed, one-year tenancy. Further, the court determined that any subsequent holdover after the one-year term creates a general, month-to-month tenancy that can be terminated with thirty days' notice. The court therefore concluded that Martin gave adequate notice and that thereafter, "no further lease term existed and no further rent [was] due and owing" from Martin to Pearman. *Appealed Orders* at 20. The court entered final judgment in favor of Martin. Pearman now appeals.

## Discussion & Decision

[13]     We review a grant of summary judgment de novo, in the same way as the trial court. *Hughley v. State*, 15 N.E.3d 1000, 1003 (Ind. 2014). We will affirm such a ruling only if, after drawing all reasonable inferences in favor of the non-moving party, the designated evidence shows that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Id*. It is a desirable tool to allow courts to dispose of cases, like the instant case, where only legal issues exist. *Id*.

## Lease Extension

[14]     The relevant facts in this case are undisputed and our consideration of this appeal involves legal issues arising in the area of landlord-tenant law. We begin by noting that there is no dispute that Martin did not provide the 180-day written notice required by Section 4 of the Lease to extend the lease term. Relying upon *Norris Ave. Prof'l Bldg. P'ship v. Coordinated Health, LLC*, 28 N.E.3d 296 (Ind. Ct. App. 2015), *trans. denied*, Pearman argues that the lease term was nevertheless extended for the five-year period when he accepted without reservation Martin's continued rent payments. Martin asserts that he undertook no affirmative acts that could be viewed as an acceptance of the five-year extension; to the contrary, he maintains that he declined the option to do so and sought to negotiate new lease terms.

[15]     In *Norris*, the tenant agreed to lease certain real property for an initial term of two years. The lease agreement provided for two "option terms" of five years each. In order to exercise either of the option terms, tenant was to give written notice at least sixty days prior to the end of the term of its intent to exercise the option. Although the tenant did not provide such notice, the tenant remained in possession of the premises after the expiration of the initial lease term and continued to pay increased rent equivalent to the amounts specifically set forth in the terms governing the option.[5] After the expiration of the first option, the

---

[5] Rent for the original term was $2250 per month, increasing to $2300 per month for the first year of the 1st five (5) year option, $2350 per month for the 2nd year, $2400 for the 3rd year, $2450 for the 4th year, and $2500 for the fifth year. The lease agreement provided further monthly increases if the second five-year option was exercised.

tenant again stayed in possession of the leased premises and continued paying the increased rent. As a result, the tenant paid about $9000 more than it would have paid pursuant to the terms of the initial agreement.

[16] This court held that where a lease agreement requires notice to the lessor of an intention to exercise an option and no notice is provided, the mere holding over and payment of rent is insufficient to establish that the lessee has exercised the option. *Id*. Rather, in lieu of the written notice, the lessor must accept another affirmative act by the lessee. *Id*. Applying this rule to the facts, the court concluded:

> [Tenant] demonstrated its intent to exercise the lease agreement's option terms and, as such, [the tenant] is bound by those terms. Although [the tenant] did not satisfy the condition precedent of providing the contractual notice to exercise the option terms, it manifested its intent by its affirmative act of paying the option terms' rent payments, which were materially different than the initial term's rent payments. And Norris waived the condition precedent when it accepted those payments in lieu of the notices.

*Norris*, 28 N.E.3d at 303.

[17] In finding that Martin did not exercise the five-year extension, the trial court relied on *Norris*, but reached a conclusion contrary to that asserted by Pearman. The trial court explained:

> Here, unlike in *Norris*, no prior options to renew were ever exercised by [Martin]. [Martin] at no time indicated a willingness to pay a higher rent and, in fact, the contrary is true. [Martin] specifically made it clear that it did not want to or in

any manner agree to pay a higher rental amount during the option period nor did it want to or in any manner agree to remain a tenant for five (5) more years as provided in the written option. Finally, and, perhaps, most importantly, the increased rent required under the option term was never paid by [Martin]. None of the affirmative acts of [the tenant] in the *Norris* decision are present in the matter presently before this court. Importantly, Pearman cites this court to no affirmative acts within his designated evidence.

*Appealed Orders* at 8.

[18]    In a motion to correct error, Pearman pointed to Martin's continued payment of rent after the CPI adjustment as affirmative conduct by Martin evidencing his intent to exercise the option. The trial court rejected Pearman's argument and clarified its summary judgment order as follows:

It is true that under the terms of the lease agreement, a CPI increase in rent occurred on February 1, 2011 –that date being two (2) months prior to the end of the original lease term – which [Martin] did pay. To the extent the Court was unclear in its summary judgment order to this effect, such matter is corrected hereby. The rent did increase –not as a true increase in the base rental amount – but only because of a CPI increase that went into effect before the expiration of the lease agreement and not because of a renegotiated increase in the base rental amount after the lease had expired and during the renewal period.

This CPI increase in rent – prior to the expiration of the lease term – is not the kind of increase in rent contemplated under Indiana law that gives rise to a finding that a tenant has, by such action, exercised an option to renew.

*Id.* at 11-12. We agree with the trial court. The CPI adjustment was an annual, automatic increase in rent that was provided for in the Lease. Martin's payment of the CPI-adjusted rent payments was not materially different than the rent paid over the course of the original lease term. Further, the increase in Martin's rent was not brought about by Martin's holding over. In short, Martin merely held over and paid rent in accordance with the terms of the Lease. Martin undertook no other affirmative conduct indicating his intent to exercise the five-year extension. To the contrary, the record is clear that Martin was unwilling to pay an increased rent to stay on the premises for the five-year period required by the option. The trial court did not err in granting partial summary judgment with regard to Martin's exercise of the option.

### Holdover Period

[19] The parties then filed cross-motions for summary judgment as to the nature of the tenancy created after expiration of the Lease and whether Martin provided sufficient notice to terminate such tenancy. As noted above, Martin paid rent to Pearman for more than two years after the original lease term expired, at which point, Martin gave Pearman one-month's notice of termination.

[20] Relying upon *Walsh v. Soller*, 191 N.E. 334 (Ind. 1934), *opinion on reh'g*, the trial court concluded that after the expiration of the original lease term, Martin's holdover created one one-year tenancy and that any subsequent holdover

created a general tenancy that could be terminated with one month's notice.[6] The trial court also cited Ind. Code § 32-31-1-2, which relates to general tenancies, in support of its position. Having determined that the status of the tenancy was month-to-month and that Martin gave one month's notice, the trial court concluded that "no further lease term existed and no further rent is due and owing." *Appealed Orders* at 20. Pearman argues that the one-year tenancy created by holding over after the expiration of a multi-year lease could not "magically" transition into a month-to-month tenancy for the subsequent holdover. *Appellant's Brief* at 38.

[21] When a lessee under a lease for a definite term holds over after the expiration of that term, the lessor has the option of treating the lessee as a tenant or a trespasser. *Mooney-Mueller-Ward, Inc. v. Woods*, 371 N.E.2d 400, 403 n. 1 (Ind. Ct. App. 1978); *Burdick Tire & Rubber Co. v. Heylmann*, 138 N.E. 777, 778 (Ind. Ct. App. 1923). In the absence of an agreement to the contrary, when a tenant holds over beyond the expiration of the lease and continues to make rental payments, and the lessor does not treat the tenant as a trespasser by evicting him, the parties are deemed to have continued the tenancy under the terms of the expired lease. *Marshall v. Hatfield*, 631 N.E.2d 490, 492 (Ind. Ct. App. 1994); *City of Bloomington v. Kuruzovich*, 517 N.E.2d 408, 411, (Ind. Ct. App. 1987), *trans. denied*; *Myers v. Maris*, 326 N.E.2d 577, 581 (Ind. Ct. App. 1975).

---

[6] Pearman does not dispute that a month-to-month tenancy can be terminated with a one-month notice.

When the original lease was for a year or more, the renewal lease is for a year at a time. *Marcus v. Calumet Breweries*, 73 N.E.2d 351 (Ind. Ct. App. 1947); *see also Houston v. Booher*, 647 N.E.2d 16 (Ind. Ct. App. 1995).

[22] In *Walsh*, *supra*, the parties entered into a multi-year lease agreement that terminated at the expiration of the term. The tenant held over for a number of years following the expiration of the original lease term with the consent of the landlord and without any change in the terms of occupancy. The Indiana Supreme Court recognized well-settled law that

> where the duration of the tenancy is definitely fixed by the terms of the agreement under which the tenant goes into possession of the premises which he is to occupy, and he continues to occupy after the close of the term without a new contract, the rights of the parties are controlled by the terms and conditions of the contract.

*Walsh*, 191 N.E. 334 (citing *Harry v. Harry*, 26 N.E. 562 Ind. 1891)). The Court further noted that, "[t]he mere fact that a tenant holds over after the expiration of his lease does not create a tenancy from year to year." *Id*. (quoting *Habich v. Univ. Park Bldg. Co.*, 97 N.E. 539, 542 (Ind. 1912)). With this in mind, the Court held that "attendant conditions create a new tenancy, not general or from year to year, but certain in point of time—one year—so fixed by the agreed notice to quit." *Walsh*, 191 N.E. at 335.

[23] Here, the trial court interpreted *Walsh* to stand for the proposition that only a single one-year tenancy is created by holding over after the expiration of a

multi-year lease and that any subsequent holding over beyond that one-year tenancy created a general tenancy. We read *Walsh* differently.

[24] First, we note that the language quoted above is from the Court's opinion on rehearing. In the original *Walsh* opinion, 190 N.E. 61, 63 (Ind. 1934), the Court noted that the tenant's holding over after the expiration of the original term with the consent of the landlord created "in effect, a tenancy from year to year" that was subject to the same terms as the original lease agreement, including the provision that provided for termination of the tenancy upon expiration. The Court held that when the landlord gave notice to quit effective one month prior to the end of what would be a one-year tenancy, such notice "amounted to a mere reminder of the termination of the lease" as provided by the terms of the original lease that remained applicable to the subsequent one-year tenancies created by the holding over. *Id*. Further, in the opinion on rehearing, the Court noted that "each holding over was subject to the same terms as to occupancy and termination." *Walsh*, 191 N.E.at 335.

[25] We find nothing in the *Walsh* opinion that stands for the proposition that there can only be a single one-year tenancy created after a holding over following the expiration of a multi-year lease. To the contrary, the Court acknowledged that successive one-year tenancies were created. *Id*; *see also Marcus*, 73 N.E.2d at 604 (citing *Walsh* for the general rule that "where the term is a definite one for a year or more and the tenant holds over after the expiration date and pays rent, the lease is extended for *successive* new terms of tenancy for a year at a time" (emphasis supplied)).

[26] We also disagree that I.C. § 32-31-1-2 supports the trial court's finding that holdovers that continue past a one-year term become general month-to-month tenancies. That provision provides that "[a] general tenancy in which the premises are occupied by the express or constructive consent of the landlord is considered to be a tenancy from month to month." In *Marcus*, *supra*, the court specifically stated that the "statute (sec. 3-1615, Burns' 1933)[7] relating to general tenancies *does not apply*." 73 N.E.2d at 352 (emphasis supplied). The *Houston* court noted the same. 647 N.E.2d at 20.

[27] Applied to the facts of this case, the original lease term expired on March 31, 2011. Martin remained in possession of the premises and continued to make rent payments that Pearman accepted without reservation. This created a one-year tenancy. After the expiration of this one-year tenancy, Martin again remained in possession and paid rent that Pearman accepted without reservation, thereby creating another one-year tenancy. When Martin continued to pay the rent after this tenancy expired, a third one-year tenancy commenced. Martin terminated this tenancy and vacated the premises two months later and with ten months remaining. The trial court erred in finding that "no further lease term existed and no further rent is due and owing" from Martin to Pearman. *Appealed Orders* at 20. The trial court's grant of summary judgment in favor of Martin on this issue is reversed. Because the trial court did

---

[7] The statute relating to general tenancies was recodified at I.C. § 32-7-1-2 and then replaced by I.C. § 32-31-1-2 in 2002.

not reach the issue of damages, we remand to the court to make such determination.

[28] Judgment affirmed in part, reversed in part and remanded.

Brown, J. and Tavitas, J., concur.